# Commonwealth *v.* Moyer, Appellant.

*Criminal law—Conspiracy—Corporation officers—Directors of beneficial associations—Evidence.*

1. The directors of a beneficial association may be convicted of conspiracy where it appears they entered into a combination with strangers by which in consideration of a large money payment to themselves they resigned as directors and turned over the control of the association and its assets to such strangers with an opportunity to the latter to make use of the assets as they saw fit and to embezzle them. An indictment setting forth such facts is sufficient to support the charge of conspiracy.

2. A large discretion is allowed the trial judge in the admission of evidence on a trial for conspiracy having numerous actors and shifting scenes of action, as the fact of conspiracy is often made out by the association of detached facts, and by the reasonable inferences deducible therefrom.

3. On the trial of an indictment for conspiracy charging the officers of a corporation with having entered into a combination with strangers to turn over the assets of the corporation to the latter in such a way that the assets might be embezzled, it is not error to permit the receiver of the corporation to testify as to what steps he had taken to locate the assets and to what extent he had recovered them.

*Practice, C. P.—Trial—Adverse comment as to the defendants not going on witness stand—Charge—Inaccurate statement.*

4. An obscure remark by the district attorney which was evidently

not intended to be a criticism on the conduct of defendants in a criminal case in failing to appear as witnesses, is not a ground for reversing a judgment on a verdict of guilty.

5. A verdict of guilty will not be set aside on the ground that the trial judge made some slight inaccuracy in his statement of facts where it appears that the mistake had no effect on the minds of the jury, and this is especially so where the judge's attention was not called to the mistake at the time it was made.

Argued Oct. 8, 1912. Appeal, No. 3, Feb. T., 1913, by defendants, from judgment of Q. S. Lycoming Co., Dec. Sessions 1911, No. 41, on verdict of guilty in case of Commonwealth v. Frank L. Moyer et al. Before Rice, P. J., Henderson, Morrison, Orlady and Porter, JJ. Affirmed.

Indictment for conspiracy. Before Hall, P. J., specially presiding.

The opinion of the Superior Court states the case.

Verdict of guilty, on which judgment of sentence was passed.

*Errors assigned* were various rulings and instructions sufficiently set forth in the opinion of the Superior Court.

*W. H. Spencer, Frank P. Cummings* and *M. C. Rhone,* for appellant.—Our contention in the court below and here, was and is, that the overt acts laid in the indictment show that the conspiracy, if any existed among these men, was not to cheat and defraud anybody, but to steal the assets of this association; and as the conspiracy was actually executed, and the assets were alleged to have been actually appropriated by Blackburn and his associates, that he and his associates are guilty not of a cheating and defrauding, but of the larceny of these assets, and the appellants are accessories in the crime: Com. v. Eikelberger, 119 Pa. 254; Loomis v. People, 67 N. Y. 322; State v. Loser, 104 N. W. Repr. 337; Com. v. Guernsey, 8 Lack. Leg. News, 13.

The consummated act as charged being larceny, which is a felony; a conspiracy to commit the act, is merged in the felony committed; and a prosecution will not lie for the conspiracy, which is but one of the constituent elements in the crime committed: Com. v. Delany, 1 Grant (Pa.), 224; State v. Mayberry, 48 Maine, 218; Elsey v. State, 47 Ark. 572 (2 S. W. Repr. 337); Com. v. Blackburn, 62 Ky. 4; People v. Thorn, 47 N. Y. Supp. 46; Com. v. Kingsbury, 5 Mass. 106; People v. Mather, 4 Wendell, 229.

The declarations of a co-conspirator are evidence against the others only so long as the conspiracy continues. If the declarations are made afterwards, they are not evidence: Wagner v. Haak, 170 Pa. 495.

Prejudicial remarks of counsel for the commonwealth to the jury is ground for reversal: Com. v. Foley, 24 Pa. Superior Ct. 414; Wilson v. United States, 149 U. S. 60 (13 Sup. Ct. Repr. 765); Surface v. Bentz, 228 Pa. 610.

It has been repeatedly held by the appellate courts of this state that where the court makes a misstatement of fact to the jury, which is calculated to prejudice the rights of either party to the controversy, he is guilty of such error as will lead to a reversal of the case: Phila., Wash. & Balt. Railroad Co. v. Alvord, 128 Pa. 42; Lombard, etc., Pass. Railway Co. v. Christian, 124 Pa. 114; Fullman v. Rose, 181 Pa. 138; Cooley v. Traction Co., 189 Pa. 563; Paul v. Kunz, 195 Pa. 207; Com. v. Light, 195 Pa. 220; Com. v. Swayne, 1 Pa. Superior Ct. 547; Coyle v. Railroad Co., 18 Pa. Superior Ct. 235.

*N. M. Edwards*, with him *Archbald M. Hoagland*, district attorney, and *Max L. Mitchell*, for appellee. The conspiracy is the substantive offense charged, not cheating, and is made a crime of itself without any proof of overt act: Com. v. Brown, 23 Pa. Superior Ct. 470; Wilson v. Com., 96 Pa. 56; Heine v. Com., 91 Pa. 145.

That it is not the intention of the courts to permit sec. 10 of the Act of May 23, 1887, P. L. 158, to be used as a trap for every obscure, inadvertent and casual remark

that may be made by counsel for commonwealth during a trial, and thereby defeat the ends of justice, is made clearly manifest in the able opinion of Justice PAXSON in 1889 in the case of Com. v. Taylor, 129 Pa. 534. See also Com. v. Fox, 46 Pa. Superior Ct. 171.

OPINION BY HENDERSON, J., February 27, 1913:

The indictment against the appellants contains two counts. The first is drawn under the 128th section of the crimes Act of March 31, 1860, P. L. 382 and charges the defendants with having unlawfully, falsely and maliciously conspired and agreed with each other and with certain other persons in the indictment named to cheat and defraud the National Protective Association and its beneficial members and policy holders of the money, property and chattels of the said association held by it for its beneficial members and policy holders, the said money, property and chattels being in the care, custody and control of the appellants as officers and directors of the said protective association, it being a corporation organized under the laws of Pennsylvania. It is further charged that this conspiracy was carried into effect by an agreement between the defendant and the other alleged conspirators pursuant to which the appellants and other directors of the said association resigned their offices as directors and aided in the election of certain other persons as directors of said association in place of the directors who resigned; that immediately thereafter the defendants who constituted the executive committee of the board of directors of the association and were in active administration of its affairs unlawfully and corruptly transferred and delivered to their alleged co-conspirators all of the money, chattels and other property of the said association; that one or more of the said co-conspirators unlawfully and corruptly paid to the said appellants the sum of $18,000, pursuant to said conspiracy and unlawful agreement, and that by means of said conspiracy and agreement the said co-conspirators or some of them unlawfully and corruptly hold and dispose of the

money, chattels and property of the said association to their own use and behoof. The second count charges a conspiracy at common law and sets forth the overt acts of the alleged conspirators substantially as averred in the first count. The refusal of the court to quash the indictment is made the subject of the first assignment of error, the reasons urged being that the indictment charged a conspiracy to cheat and defraud and that the overt acts set forth show an executed conspiracy and the appropriation of the property and assets of the association by certain of the alleged co-conspirators of the defendants and that this was not the act of cheating and defrauding but was larceny and that the appellants were accessories in that crime. It was further contended that the conspiracy to commit the act is merged in the felony committed and that a prosecution would not lie for a conspiracy which is but one of the constituent elements in the felony. No objection is made to the form of the counts in the indictment, and the only question for consideration with respect thereto is whether a conspiracy is sufficiently charged. The 128th section of the act of 1860 provides: "If any two or more persons shall falsely and maliciously conspire and agree to cheat and defraud any person or body corporate, of his or their moneys, goods, chattels, or other property, or to do any other dishonest, malicious and unlawful act, to the prejudice of another, they shall be guilty of a misdemeanor." Whether it was the intention of the legislature by this section of the criminal code to extend the statutory definition of "conspiracy" to the wide limits to which it has been extended in the common law it is not necessary to consider. It may be as has been intimated in some of the cases that its operation is limited to conspiracies to do such dishonest, malicious and unlawful acts as would defraud another of some right or property, but we regard it as broad enough to cover the facts set forth in the first count of the indictment. The defendants were the chief officers and managing directors of the association. They held and controlled its funds for the use of its members in accordance with the charter

and by-laws. They had authority to sell or exchange this property, but only in the administration of the trust confided in them and for the benefit of the members of the association. The transaction between them and the alleged co-conspirators by which the property was surrendered by the appellants to those whom they attempted to put in their places as directors was not a larceny. The property was lawfully in their possession; no other person was authorized to receive it or hold it. Their disposal of it in the manner charged in the indictment was an embezzlement rather than a larceny and if done as alleged was a dishonest and unlawful act prejudicial to the interests of the members of the association and plainly within the terms of the section referred to. The second count charges a conspiracy between the appellants and other persons named in which the appellants agreed in consideration of $18,000 paid to them to resign their positions as officers and directors of the National Protective Association and to induce other directors to resign and to elect and assist in electing as their successors the co-conspirators named and to deliver the possession of all the money, stocks, securities, property and assets of every nature and description and all books, records, letters, documents and papers of all kinds of the said association to the said co-conspirators and that in pursuance of said conspiracy and unlawful agreement the appellants unlawfully, wrongfully and maliciously did resign their positions as directors and did induce other directors of said association to resign and did elect and assist in electing some of the co-conspirators of the defendants directors of the association and did unlawfully, wrongfully and corruptly transfer and deliver possession of all the property of said association to the said co-conspirators by means whereof the said co-conspirators were enabled to and did unlawfully and corruptly convert the money and other property and assets of the said association to their own benefit and use. This count has a wider application than that defined in the 128th section of the act of 1860. A conspiracy is expressly charged and

the overt acts set forth support the charge of the unlawful confederation and agreement. That the acts of the parties resulted prejudicially to the interests of the protective association and its members is clearly shown and the inferences from these acts as bearing on the criminal intention of the defendants were to be drawn by the jury. If the property was unlawfully disposed of in the manner described the protective association and its members were deprived thereof dishonestly and were thereby defrauded. We are unable to accept, therefore, the argument of the appellants that the indictment does not contain a sufficient charge of conspiracy.

In the second assignment exception is taken to the action of the court in admitting the testimony of Blackburn in regard to a meeting with Stanton and Beaman in the city of New York prior to the meeting at Williamsport at which it is alleged the conspiracy was completed. This evidence was admitted to show the development of the arrangement which resulted in the transaction out of which the prosecution grew. It was necessary to make a beginning of proof, and a logical order was observed in the presentation of the commonwealth's evidence. Several persons were connected with the scheme; they lived in different places; some of them held consultations apart from others, but all of these conferences and acts were directed toward the same object and had their focal point at Williamsport where the persons interested all met on September 9 and September 10, 1910, to complete and carry out the plan. The conference between Blackburn and Stanton and Beaman had direct connection with this final meeting and showed how Blackburn came into the arrangement and the connection of Beaman and Stanton who were said to be implicated in the conspiracy alleged. Whatever doubt there could have been in regard to the admissibility of the evidence at the time it was offered was removed by evidence subsequently introduced tending to show the relation of the parties who met in New York to the subsequent meeting at Williamsport. A large discre-

tion is allowed to the presiding judge in the admission of evidence on a trial for conspiracy having numerous actors and shifting scenes of action as the fact of conspiracy is often made out by the association of detached facts and by the reasonable inferences deducible therefrom.

The third, sixth, seventh, eighth, twelfth and sixteenth assignments relate to similar objections as to the admissibility of evidence, some of it relating to acts and declarations of the alleged co-conspirators after the conspiracy was executed. We have given careful consideration to the evidence in all of these assignments and are not convinced that the court was in error in its admission. The court could not declare that the matters introduced by the commonwealth were not in contemplation by the parties at the time the agreement was entered into at Williamsport. The jury might well infer from the conduct of the appellants and from the action of Blackburn in paying the money to Moyer, if, as the jury has found Scholl and Spencer knew of that payment, and from the delivery of the possession of all of the property to Blackburn and his associates, that the defendants contemplated some use of the property not consistent with good faith or honesty. The examination objected to in the fourth and fifth assignments was a matter within the discretion of the court. Blackburn was the witness. It was alleged in the indictment that he was a co-conspirator with the defendants. He had formerly testified in the preliminary hearing before Esquire Batzle on the information against the appellants, and apparently for the purpose of refreshing his recollection as to a particular matter his attention was called to his examination before the magistrate. He had also been a witness in a quo warranto proceeding against the National Protective Association in Dauphin county and his attention was called to a portion of the evidence given at that time. We are unable to see from an examination of all of the evidence that this reference to the former testimony of the witness prejudiced the defendants in the slightest degree, and in the absence of evidence that the discretion of the court was

abused no foundation exists for a reversal of the judgment. Beaman is the only one of the defendants to whom the evidence in question taken in the quo warranto proceeding applies, and he was acquitted. The testimony taken before the alderman quoted in the assignment relates principally to Beaman and Stanton, and its reference to Moyer is not important as his connection with the case appears from an abundance of other evidence.

The ninth and tenth assignments are not pressed and need not be considered. We find no error in the admission of the evidence there excepted to.

The admission of the certificate from the insurance department of the commonwealth that the American Patriots located at Springfield, Illinois, had never registered in the department of insurance in Pennsylvania was not erroneous. It is not now pretended that the arrangement said to have been contemplated between Blackburn and his associates and the American Patriots was ever carried into effect, nor is it alleged that that organization had authority to do business in Pennsylvania.

Objection is made in the fourteenth assignment to the admission of the evidence of Mr. Larrabee, receiver of the National Protective Association appointed by the court of common pleas of Dauphin county, showing the steps he had taken to locate the property of the National Protective Association and to what extent he had recovered it. As the indictment charges an unlawful and fraudulent appropriation of the assets of the National Protective Association to the prejudice of its members as the object of the conspiracy it seems a pertinent line of inquiry in support of the conspiracy charged to show that the property of the association had been embezzled or dissipated. That would be persuasive evidence of the fact of the existence of the conspiracy. The witness was not called to prove declarations of alleged co-conspirators or other parties after the completion of the conspiracy to establish the guilt of the defendants but to show, as far as he knew, the situation of the property at the time he was authorized

to settle up its affairs.  While a conspiracy may exist without overt acts and while it is not necessary that such acts be proved in all cases, evidence of them is competent in support of the charge.

Objection is made in the eighteenth assignment to the action of the court in refusing to withdraw a juror and continue the case because of the remarks of one of the counsel for the commonwealth in his address to the jury. The remark excepted to was this: "All of the defendants except one who did not go on the stand here admitted that the association was then in good condition." The record does not show the context in which the language attributed to the counsel for the commonwealth was used, but it appears from the evidence that by agreement of the counsel for the commonwealth and the defendants portions of the testimony of Moyer and Scholl given in the quo warranto proceeding at Harrisburg were read by counsel for the commonwealth at the trial, from which testimony we learn that Scholl there testified that the National Protective Association was in "good shape" at the time when the property was transferred to Blackburn and his associates, and by him and Moyer that they had no knowledge at that time that the association was to be turned over to the American Patriots or that it was proposed to reinsure the members of the National Protective Association with the American Patriots and the remark of the commonwealth's counsel seems to have reference to the testimony there taken.  It is not consistent with the facts at the trial, for none of the defendants there testified that the association was in good condition.  They were not called to testify on that or any other subject, and it could not have been understood by the court or the jury that the counsel was commenting on the fact that they had not appeared as witnesses in their own behalf at the trial.  It is "adverse comment" which is forbidden by the statute.  Where an attempt is made to excite the prejudice of the jury through the fact that the defendant did not testify in his own behalf the law protects the accused

from such unwarranted invasion of his right, but the obscure remark of the counsel for the commonwealth was evidently not intended to be a criticism on the conduct of the defendants in failing to appear as witnesses. It did not impress the court below nor does it us as an attempt to present to the attention of the jury the fact that the defendants had not testified, and it ought not therefore to be regarded as an adverse comment on their omission so to do.

The nineteenth, twentieth, twenty-first, twenty-second and twenty-third assignments bring up excerpts from the charge of the court. An application of the evidence to the charge fails to disclose such inaccuracies of statement as would justify a reversal of the judgment. The attention of the court should have been called to the fact that it was only in the letter of Moyer to Van Buskirk that it appeared that the conversation with Van Buskirk was had over the telephone by Spencer, one of the defendants. It was stated, however, in the charge to the jury that it was in a declaration in this letter that Spencer appeared to have had the conversation. As the subsequent evidence connected Spencer directly with the transfer of the control of the association to Blackburn and his associates this slight inaccuracy could have had no effect on the minds of the jury. The court did say to the jury that after Van Buskirk received a letter from Moyer inviting him to a conference it was agreed that the control of the association might be turned over to any purchaser for the sum of $25,000. It was not disputed at the trial that the first proposition of Moyer was to turn over the control of the company to Van Buskirk and those whom he represented for $25,000. Blackburn, who was to put up the money, was a stranger to Moyer as were Blackburn's associates, and the court was not wide of the mark, therefore, in saying that it was agreed that the control might be turned over to any purchaser for the sum of $25,000. As no one, however, was willing to pay $25,000 for the property it is not apparent that any prejudice resulted to the defendants.

The statement in the charge that $19,000 in cash in the bank was delivered to Blackburn together with the other assets was supported by evidence not contradicted. Blackburn furnished the consideration; he controlled the new directors; the directors controlled the assets of the protective association and the money in the bank was therefore to all intents and purposes delivered to Blackburn. At least an inference to that effect was warranted from the evidence.

The twenty-fourth and twenty-fifth assignments challenge the answers to the third and seventh points submitted by the defendant's counsel. These points present the proposition that if the appellants resigned as directors of the protective association for the purpose of giving Blackburn and his associates control and for the purpose of reinsuring the membership in the American Patriots or some other strong responsible company then such purpose was not unlawful and the verdict of the jury must be "Not guilty." The court refused the points for the reason that, if it were the intention of the parties to give a reinsurance, that would not justify the defendants in converting the assets of the association to their own use if they did so convert them. If the defendants received the consideration for resigning which is alleged and gave control of the association and its assets for which they were the trustees to strangers to the association with an opportunity to the latter to make such use of its assets as they saw fit and to embezzle them as appears to have been done to some extent at least, the court could not with propriety have affirmed the appellants' points. The expectation of the defendants that Blackburn and those acting with him would reinsure the members of the protective association with some other company did not justify the conduct of the defendants as shown by the evidence and found by the jury. By the twelfth point the court was requested to charge the jury that the commonwealth had failed to make out a case and the verdict should be for the defendants. The evidence is voluminous, and we have examined

it carefully in the light of this assignment. This examination has satisfied us that the point should not have been affirmed. It is clearly shown that Moyer received $13,000 from Blackburn as a consideration for retiring from the directorship and assisting in placing Blackburn and his friends in control. Scholl, Spencer and Moyer were salaried officers each of them receiving $2,400 a year. There is evidence from which the jury would be justified in the conclusion that Scholl and Spencer participated in the consideration paid. They aided in the examination of the assets. Scholl asked the representative of Blackburn, who examined the assets, whether he thought them worth the price, and both Scholl and Spencer were active in enabling Blackburn to get possession of the association and all that went with it. That they could have taken the part which they did in the transaction, resigned their offices and unlawfully delivered over to strangers the control of the association and its assets and that without taking any insurance by bond, contract or otherwise that the new managers would act with fidelity to its members and without giving notice to the members of the association of what they had done, that all of this was with good motives and without a dishonest purpose on their part the jury did not believe, and the earnest argument of the appellants' counsel has not convinced us that the case was not properly submitted to the jury.

The judgment is, therefore, affirmed and the record remitted to the court below to the end that the sentence be carried into effect.