## Commonwealth *v.* Beaman, Appellant.

*Criminal law—Conspiracy—Evidence—Fraud of officers of beneficial association.*

1. On the trial of an indictment of the officers of a beneficial association for the fraudulent manipulation of the funds of the association, the commonwealth is not concluded by the testimony of one of the parties to the transaction called by the commonwealth to the effect that the transaction in question was not unlawful; and the conviction of the defendants will not be set aside because of such testimony.

2. On the trial of such an indictment it is not error to refuse to admit oral testimony of the opinion of an attorney as to the legality of the transaction where the opinion of the attorney was in writing; nor is it error to refuse to permit one of the defendants to testify that the commissioner of insurance of the state of Ohio regarded the transaction as legitimate.

3. On the trial of an indictment for conspiracy charging the officers of a beneficial association with having entered into a combination with strangers to turn over the assets of the corporation of the latter in such a way that the assets might be embezzled, the commonwealth may show that certain of the assets were paid over to the defendants. In such a case it is not error to exclude a question on cross-examination as to whether a witness had been informed that certain of the defendants had paid back the money they had received. Such a question is mere hearsay, and not proper cross-examination.

Argued Feb. 24, 1914. Appeals, Nos. 252 and 260, by Joseph W. Beaman and Edward M. Cowell, from judgment of Q. S. Bradford Co., February Sessions, 1912, No. 83, on verdict of guilty in case of Commonwealth v. Joseph W. Beaman et al. Before RICE, P. J., HENDERSON, ORLADY, HEAD, PORTER, KEPHART and TREXLER, JJ. Affirmed.

Indictment for conspiracy.  Before CAMERON, P. J.

See Com. v. Moyer, 52 Pa. Superior Ct. 548.

At the trial the evidence for the commonwealth tended to show that the defendants were the officers and directors of the Keystone Guard, a beneficial association, and that they had conspired with strangers to turn over the assets of the company to them in consideration of a large sum of money, with an opportunity to such strangers to improperly use the funds of the association.

The opinion of the Superior Court states the case.

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were various rulings on evidence referred to in the opinion of the Superior Court, and refusal to give binding instructions for defendants.

*A. C. Fanning* and *M. Lilley*, of *Lilley & Wilson*, with them *John E. Cupp* and *C. E. Sprout*, for appellants.

*Chas. M. Culver*, district attorney, with him *W. T. Carey*, for appellee.

OPINION BY TREXLER, J., May 4, 1914:

The defendants were officers and directors of a fraternal beneficial organization known as "Keystone Guard." They were indicted for conspiracy and charged in that they unlawfully, in consideration of a large sum of money, turned over control of the corporation to persons not connected therewith, with an opportunity to the latter of improperly using the funds of the association. The principal actor in the transaction was one, Blackburn. After the conclusion of the testimony there was a motion made to discharge the defendants for the reason that there was not sufficient evidence to sustain a conviction.

There is no question that the indictment is properly

framed and that the facts set forth therein, if proven, are sufficient to sustain a conviction for conspiracy. That was settled in the case of Com. v. Moyer, 52 Pa. Superior Ct. 548. That case is almost identical with the one before us and some of the same participants appear in it.

The reason urged for binding instructions for the defendant was that the commonwealth having called Blackburn and he having testified to the details of the transaction and stated how the control of the company had passed to him and those with him, at the conclusion was asked, "Whether the transfer was made in good faith and was intended for the benefit of the company and not unlawful?" He testified that there was nothing unlawful in the whole matter. The novel proposition is now advanced that the commonwealth is bound by his statement and he having testified to the effect that everything was done bona fide, no conviction can be asked for. This position is not tenable. The facts as stated by the witness were for the jury. They had the right to sift the testimony and it was for them to decide whether the acts of the defendants were performed in good faith or not. The opinion of Blackburn as to the good faith of the defendants, or his statement as to his own good faith in the matter, was not controlling. In relation to the defendants' attitude at best it was but an opinion and had no probative value.

The other assignments of error relate to the admissibility of testimony. The first of these was the refusal of the court to allow the witness to testify to an opinion of an attorney as to the legality of the transaction. The court was clearly right in refusing this. The opinion being in writing, the writing was the best evidence. There is no reason why the contents should be proved aliunde.

The second assignment is that Blackburn was not allowed to testify as to certain information which he received from the commissioner of insurance of the

state of Ohio.   The purpose of this being to show that
the commissioner regarded the transaction involved in
the case as legitimate.   As stated by the court below on
the trial, whether the commissioner of insurance of the
state of Ohio stated that the transaction was legal, or
not, would not justify or condemn the defendants.
Whether he was qualified to give such an opinion we
know not.   In any event the matter would be very
remote.   The court might have properly excluded it on
the ground that it was not cross-examination.

The third assignment is as to the allowance of testi-
mony that Stanton, one of the defendants named in
the indictment, not present at the trial, had knowledge
that the assets of the company were to be used to pay
the money which the defendants were to receive for
their part of the transaction.   If after proof of con-
spiracy, the declarations of any of the defendants as to
the aims and objects of the conspiracy are receivable
against all, it would seem that a conversation with one
of the defendants, at which time information as to the mat-
ters involved was imparted to him would be admissible.
The commonwealth sought to bring this knowledge home
to the defendants present at the trial but failed.   A
large discretion is allowed the trial judge in the admis-
sion of evidence on a trial for conspiracy, and even if
we were to take the view that the admission of this testi-
mony was of doubtful propriety, it did not constitute re-
versible error as the proof of the commonwealth to con-
nect the other defendants failed.

The fourth assignment is the overruling of the objec-
tion to the offer on the part of the commonwealth to
prove the disposition of the assets of the company.
This was certainly competent.   It was in line with the
commonwealth's proof and part of its case.

The fifth assignment is not pressed.

The sixth assignment is as to the exclusion of a ques-
tion on cross-examination.   The question being whether
the witness had been informed that certain of the de-

fendants had paid back the money they had received. This was not proper cross-examination, furthermore it was mere hearsay.

The question involved in the seventh and eight assignments has already been discussed. They refer to the declarations of Blackburn that no unlawful combination existed. The defendants' counsel attempted to introduce on cross-examination that the witness (Blackburn) in a former proceeding testified that no conspiracy existed. This was not in contradiction of the witness, but to confirm his testimony. It was plainly incompetent.

The ninth and last assignment is the refusal of the court in instructing the jury to acquit. We have already in part referred to this, but it may be well to comment briefly on the testimony. A careful reading of it shows that the decision of the matter was for the jury. There was certainly sufficient evidence to sustain a conviction. The scheme of the defendants was started by the question, "What is there going to be in it for us?" This was followed by acts of concealment, misrepresentation and double dealing. Parties concerned were not even true to each other. Some ostensibly receiving certain money had made arrangements to receive an additional sum without the knowledge of their confederates. A large sum of money, the entire assets of the corporation, was unlawfully delivered over to strangers together with the control of the association. No notice of this was given to members of the association, but the truth was artfully concealed from them. Outside of the exercise of honest and most scrupulous good faith which is required of officers and directors of a corporation they sacrificed the corporate good to their own selfish interest and were disloyal to the people who put them in office.

The assignments of error are overruled, the judgments are affirmed and the record remitted to the court of quarter sessions of Bradford County with direction that the judg-

ments be fully carried into effect and to that end, it is ordered that the defendants forthwith appear in that court, that each defendant be by that court committed to serve and comply with such part of his sentence as had not been performed at the time this appeal was made a supersedeas.