Commonwealth of Pennsylvania *v.* Williams and Breese, Appellants.

Argued October 20, 1930. Before TREX-LER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Frank L. Pinola,* and with him *Charles B. Lenahan,* for appellants.

*Thomas M. Lewis,* District Attorney, and with him *Herman J. Goldberg* and *M. S. De Pierro,* Assistant District Attorneys, and *Edmund E. Jones, Joseph A. Mulhern* and *Frank A. McGuigan,* for appellee.

OPINION BY CUNNINGHAM, J., December 27, 1930:

As a single and identical question is involved under these separate appeals they will be disposed of in one opinion.

In 1928 Merle B. Breese, one of the appellants, as engineer of Luzerne County, was in charge of its road and highway department and William A. Williams, the other appellant, was a dealer in oil and other road materials. The commissioners of that county having authorized its controller to advertise for proposals to furnish road oil, etc., Williams, with others, submitted bids for two grades of oil, designated as "Class A" and "Class C," and was awarded the contract as the best, although not the lowest, bidder. Under this contract he furnished to the county twenty-four car loads of oil and certain quantities of other road materials described as "Cold Patch" and "Ugite." The oil was paid for out of the county treasury upon three separate bills and vouchers and a like number of bills were presented and collected for the other materials; the

total amount paid for oil to Williams, as a contractor with the county, was approximately $31,250.

In June, 1930, Breese and Williams were charged, together with the commissioners and controller, under an indictment containing eight counts, with having framed and consummated a conspiracy to defraud the county out of more than $10,000 in the course of the alleged performance of the contract. Breese supervised the preparation of the specifications under which Williams bid and approved all his bills. As none of the assignments is based upon the admission or rejection of testimony the evidence has been omitted, by agreement of counsel, from the printed record, but we gather from the opinion of the court below, refusing appellants' motions for a new trial, that some of the outstanding facts shown by the Commonwealth were the substitution by Williams, with the consent of Breese, of class "A" oil for the higher (class "C") grade he had undertaken to furnish and the presentation, certification and payment of bills for quantities grossly in excess of the amounts actually furnished.

Upon the matter of substitution the court said: "Immediately after letting the contract, Breese claims that Williams (who did not take the witness stand) said to him that he could not furnish oil under Class 'C,' although he was awarded the contract for that material, and the specifications upon which the contract was let were sent by Breese to the laboratory and contained an erasure in the class of material. There was a substitution for the oil bid and contracted for and Breese admits that this information was not conveyed to the commissioners, claiming that it was equivalent to the material specified and contracted for, and Williams was paid a higher price than he bid." With reference to the "padded" bills the opinion continues: "Sometime later, upon an appeal by taxpayers from the controller's audit, for the years 1928 and 1929, it

was discovered that in all bills submitted by Williams to the county for road oil, the quantity of gallons in each car was raised or padded by one thousand gallons, excepting in one instance, where the quantity was raised nine hundred and ninety-nine gallons, and in the cold patch shipments one bill was padded by three hundred and seventy-four gallons, another bill by five hundred and thirty gallons, and another bill by twenty barrels at fourteen dollars a barrel; in other words, the county paid unto Williams at least ten thousand dollars for oil and cold patch that was not delivered, and the funds of the county abstracted in this manner.''

The case went to the jury against the six defendants and upon all the counts in the indictment; the result was a general verdict finding Breese and Williams ''guilty as indicted'' and the commissioners and controller ''not guilty.''

The punishment provided by section 128 of the Act of March 31, 1860, P. L. 382, 413, under which the indictment was drawn and conviction had, is a fine of not more than $500 and either simple imprisonment or imprisonment by separate or solitary confinement at labor, not exceeding two years, subject of course to the provisions of section 6 of the Act of June 19, 1911, P. L. 1055, as amended by section 1 of the Act of June 29, 1923, P. L. 975, to the effect that the sentence shall be for an indefinite term, the maximum limit of which shall never exceed the maximum time prescribed as a penalty for the offense and the minimum never more than one-half of the maximum. Each appellant was sentenced under the third and also under the fourth count of the indictment, cumulatively. The sentence against each under the third count was costs, a fine of $500, restoration of $6,290.91 to the county and imprisonment in the state penitentiary for a minimum term of one year and the maximum term of two years;

under the fourth count each appellant was sentenced to costs, $500 fine, restoration of $2,572.21 and imprisonment from one to two years "from the expiration of the full term imposed on count number three in the indictment." The imposition of these sentences is the error assigned in support of these appeals.

The contention of appellants, as we understand it, is that under the indictment in this case, and the general verdict thereon, neither appellant, in so far as fine and imprisonment are concerned, could lawfully be sentenced to a fine in excess of $500 and imprisonment beyond a. term of from one to two years. The disposition of this contention requires an analysis of the indictment in order that the effect of the references in the sentences to designated counts may be apprehended and the validity of the sentences tested. The first count charged, substantially in the language of section 128 of the Act of 1860, supra, that the defendants conspired on or about the 26th day of June, 1928, to cheat and defraud the County of Luzerne of its money to the extent of "about $10,000." The second charged the same conspiracy on the same date with the same intent to defraud the county of the same amount but contained in addition a statement of the means adopted by the alleged conspirators to effectuate their designs—(a) fraudulently procuring the award of the contract to Williams; (b) charging the county for alleged quantities of oil and other materials that were not actually delivered; (c) the presentation and payment of bills for oil of a cheaper, at the prices bid for a higher, grade; (d) the fraudulent and dishonest delivery of materials under the contract; and (e) other "unlawful, false, fraudulent, wilful and malicious means, devices and contrivances." It may be observed in passing that these convictions could have been sustained under either of these counts as it is not necessary, as a general rule, to allege any

specific overt acts or that any person or body corporate was, in fact, defrauded; in charging an executed conspiracy, however, it is proper to set forth the means employed in the consummation of the fraudulent purpose. The third count charged that on a later date, October 22, 1928, the defendants conspired to cheat the county out of the sum of $6,290.91 by means of the presentation, certification and payment of a bill for oil which was fraudulent with respect to both quantity and price. In the Commonwealth's history of the case the statement relative to this count is that it was based upon the charge that on the date mentioned Williams delivered to the county sixteen car loads of oil, represented as containing 129,028 gallons and charged the same at .153 cents per gallon; whereas, the actual amount contained in the cars was only 113,-028 gallons and the price, per gallon, bid for oil of the grade delivered was only .119 cents. The result was that Williams, through the excess quantity, obtained $2,448 for oil never delivered and $3,842.85 through charging the higher price, or a total of $6,-290.91, the amount specified in the count and in the sentences pronounced thereon. The fourth count charged the same sort of a transaction on November 19, 1928, resulting in the fraudulent obtaining of $2,-572.21 from the county treasury, that being the amount referred to under the restitution provision in the sentences upon that count. The fifth charged a similar transaction under date of December 10, 1928, resulting in a loss to the county of $1,414.30. The sixth, seventh and eighth counts were based upon the presentation and payment under dates of June 28th, September 28th and October 29, 1928, of bills for "Cold Patch" and "Ugite," which were false in respects similar to the bills for oil and under which the county was defrauded of amounts varying from $97.24 to $280.

Counsel for appellants contend that there was but

one conspiracy, namely, the conspiracy charged in the first, and amplified in the second, count, and that the remaining counts merely set forth overt acts committed in furtherance of the conspiracy and from the commission of which its existence could be inferred by a jury. On the other hand, the representatives of the Commonwealth argue that the indictment charged "separate and distinct conspiracies, in different counts, upon different dates, to cheat and defraud the County of Luzerne out of different sums of money, and involving different commodities." We think this is not a proper construction of the indictment.

The acts charged in the third, fourth, fifth, sixth, seventh and eighth counts of the indictment were not constituent elements of the offense. In Com. v. McKisson, 8 S. & R. 420, 421, it was said that "in conspiracy, the confederating is the gist of the offense, and as no overt act is necessary to complete it, none need be laid." After stating that it is essential to set forth in the indictment that the object of the confederation was an unlawful one, the opinion continues: "But in stating the object it is unnecessary to state the means by which it was to be accomplished or the acts that were to be done in pursuance of the original design; they may, in fact, not have been agreed on." However, if the means by which a conspiracy has been executed are known to the pleader, it is proper practice, as we have said, to outline them in the indictment. When, as here, overt acts are "charged and subsequently sustained by proof, they [may be] regarded as matter of aggravation of the criminality of the unlawful combination, or merely as proof of the intent. In construing the indictment they could be disregarded as surplusage": 5 R. C. L., Sec. 27, p. 1081.

When the dictum in Com. v. Doughty, 139 Pa. 383, 398, to which counsel for the Commonwealth direct our attention, is read in connection with the indict-

ment in that case, its inapplicability to the case at bar becomes apparent. There the indictment contained two counts charging conspiracy to indict, an offense punishable under section 127 of the Act of 1860, and two charging conspiracy to cheat and defraud under section 128. The defendants were convicted generally and the term of imprisonment was fixed at three years, the maximum period designated in section 127.

We agree with appellants' contention that there was but one conspiracy charged in this indictment—a conspiracy to cheat and defraud the county out of a sum of money approximating $10,000, the aggregate of the sums set out in subsequent counts. The essential issue for the jury was not whether Williams presented, and Breese approved, on October 22d, a certain bill for road materials by which the county was cheated out of $6,290, or a bill on November 19, 1928, by which it lost $2,572, but whether Breese and Williams were parties to a conspiracy to defraud the county by procuring the award of the contract to Williams and the presentation, certification and collection of fraudulent bills thereunder. The amount fraudulently collected on any particular bill was not important, nor was the ascertainment of the exact amount out of which the county was defrauded essential to the conviction. If the theory of the Commonwealth is sound and the maximum punishment could be imposed upon both the third and fourth counts, it could also be inflicted under the fifth, sixth, seventh and eighth and a total maximum term of twelve years imposed. The suggestion in the brief for the Commonwealth that restitution as a part of the sentence could not be fully accomplished unless the right of the court to sentence on each count is upheld does not impress us. Section 179 of the Act of March 31, 1860, P. L. 382, 425, provides, among other things, that on all convictions for the unlawful and fraudulent obtaining of any property, made the

subject of larceny, the defendant shall, in addition to the punishment prescribed in the applicable section, be adjudged to restore to the owner the property taken, etc. When it appears, as it does in this case, that defendants convicted of conspiracy have actually defrauded any person or body corporate, they may properly be sentenced to make restitution of the amount fraudulently obtained, but we see no reason why in sentencing these appellants generally under the indictment, or with particular reference to the first or second count thereof, they should not be directed to make restitution of the amount shown by the evidence to have been unlawfully obtained by them: Com. ex rel. v. Francies, 67 Pa. Superior Ct. 588. By reason of the peculiar characteristics of the crime of conspiracy, consideration of decisions relative to sentences for other offenses affords little aid, but see generally Com. ex rel. v. Ashe, 293 Pa. 18, for the proposition that a sentence under an indictment containing several counts, charging substantially the same offense under different acts, should be limited to punishment for the most serious, single offense.

Our conclusion is that these appellants cannot lawfully be sentenced under this indictment and verdict to pay a fine in excess of $500 and that the term of their imprisonment cannot be longer than from one to two years; in addition to such fine and imprisonment each may be directed to make restitution to the county of such sum as the court below may find from the evidence has been unlawfully and fraudulently obtained.

The convictions are affirmed, but, to the extent that the sentences appealed from exceed the punishment above indicated, the assignments of error are sustained: Com. v. Camwell, 89 Pa. Superior Ct. 339, 352.

The record is remitted to the court below with directions to proceed to sentence the appellants anew in due order and according to law.