## Commonwealth *v.* Berman, Appellant.

Argued May 2, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*Francis T. Anderson,* with him *William A. Gray,* for appellant.

*Hugh D. Scott, Jr.,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY RHODES, J., October 21, 1935:

The appellant, Morris Berman, has appealed from a conviction and sentence on a charge of conspiracy to cheat and defraud. The indictment sets forth that "on the twenty-eighth day of January, A. D. 1932, a certain corporation named Cummings Brothers Funding Company, of which one William H. Cummings was President, was the owner of certain real estate and land divided into lots, situate at Ventnor, and at Margate in the County of Atlantic, and elsewhere in the State of New Jersey.

"That the said Cummings Brothers Funding Company, under an agreement in writing bearing date the 28th day of January, A. D. 1932, and of a supplemental agreement thereto, bearing date the 26th day of February, in said year with a certain other corporation named the Guaranty Company of America—it being a corporation theretofore organized by one Morris Berman alias Morris Barton, of which he was the principal stock holder, and of which one Maurice L. Senn was President, one Solis Scharf was Secretary and Treasurer—employed the said Guaranty Company of America as its exclusive agent to sell the aforesaid certain real estate and lots of ground owned by it, and any of said lots which might be acquired by it by repossession, to purchasers thereof for moneys or other consideration, in accordance with the terms and provisions of certain written agreements, of certain real estate sales con-

tracts, the form of which was to be prepared and furnished by said Cummings Brothers Funding Company to the said Guaranty Company of America, and which form of agreement or sales contract was not to be changed, altered or modified except with the mutual consent of both corporations; and that under said certain agreements between said corporations, the said Guaranty Company of America, was to create and maintain at all times a group of salesmen, for the purpose of selling said certain real estate or lots, the number of such salesmen to be within its discretion.

"That by said agreement and supplemental agreement between said corporations, among other provisions therein contained, it was stipulated and agreed that the said Cummings Brothers Funding Company was to receive twelve and one-half per cent of the appraised value of all lots sold for it by the Guaranty Company of America, and that the balance thereof was to be received by the Guaranty Company of America as full compensation to it for services and commission for the sale of said real estate or lots; and that all moneys or any other consideration or considerations which would be paid by purchasers of said real estate or lots should be deposited in a special account of all properties sold by the said Guaranty Company of America in the name of the said Cummings Brothers Funding Company, and that the checks drawn to and against that account for distribution of said funds were to be drawn by a representative of the said Funding Company named or appointed by him the said William H. Cummings and were to be countersigned by the said Max Sirott or by a person designated by him to sign said checks by the said Guaranty Company of America, and the distribution of any and all funds elected as aforesaid should be made on Saturday of each week in the amount and in accordance with the terms and pro-

visions of the aforesaid agreements between said corporations."

Then follow the thirty-six counts contained in the indictment. The first count charges that the appellant and others (some named and some as yet unknown) did "on the Fifth day of February, in the year of our Lord one thousand nine hundred and thirty-two, at the county aforesaid, and within the jurisdiction of this Court, unlawfully, wilfully and maliciously did conspire and agree together between and amongst themselves then and there unlawfully, wilfully, maliciously, fraudulently, deceitfully, corruptly and dishonestly to cheat and defraud and to cause and procure to be cheated and defrauded a large number of persons, to wit, George W. Brady, Esther Brady, Nannie C. Gonso nee Klipp, Margaret C. Russell, Marianne L. Russell, William J. Kinsey, Dorson C. Cole, Harry O. Ayer, Willard Arnold, Emma Arnold, Ross W. Brown, Anna Bromiley, George H. Hogan, Ada R. Plessinger, Katherine L. Eaton and Anna Eaton, Mary P. Jones, M. J. Renehen, and a large number of other persons respectively whose names are to this Grand Inquest as yet unknown but who were and are named and included in a list of names of persons who were known by them the said Morris Berman, alias Morris Barton, William H. Cummings, Albert Itsynson alias Albert Tyson, Henry A. Newman alias John Burke, Harry Abrahamson, Albert Kravitz alias Ellwood Travis, Max Sirott, and Paul Sternal, to be persons who had purchased and were then known to be the respective owners of divers shares of a capital stock of divers corporations and of other securities which were then of no market value and which were then worthless, respectively, of divers sums of money and of divers good and valuable securities and certificates of shares of capital stock of divers corporations, altogether of the value, to wit, two hundred thousand dollars and upwards, in lawful money of the

United States, of the moneys, property and security respectively of the said George W. Brady, Esther Brady, Nannie C. Gonso nee Klipp, Margaret C. Russell, Marianne L. Russell, William J. Kinsey, Dorson C. Cole, Harry O. Ayer, Willard Arnold, Emma Arnold, Ross W. Brown, Anna Bromiley, George H. Hogan, Ada R. Plessinger, Katherine L. Eaton, Anna Eaton, Mary P. Jones, M. J. Renehen, and of the divers other persons respectively named in the aforesaid list of those whose names are to this Grand Inquest as yet unknown as aforesaid; by divers unlawful, false, fraudulent, wilful, malicious, indirect, deceitful, dishonest and corrupt means, devices and contrivances, to wit, by means of attempting to induce and procure, and of procuring and inducing the aforesaid purchasers and owners of the aforesaid worthless shares of stock and securities named in said list respectively, to entrust the said Cummings Brothers Funding Company with the said certain then worthless securities and certificates of stock of divers corporations respectively owned by them by trickery, fraud and deceit and under the false pretenses and representations that the said Cummings Brothers Funding Company was then in a position to and was able to and would recover for said respective owners thereof, the full prices which had been paid by them respectively therefor, at and for a nominal charge or price of only the customary small brokerage fee or commission therefor; and by means of attempting to induce and procure, and by inducing and procuring divers of the said owners of said worthless and valueless shares of stock and securities by and through trickery, fraud and deceit to sign and execute contracts of sale for the purchase by them respectively from said Cummings Brothers Funding Company, of certain of the said lots or parcels of ground owned by said Company as aforesaid at exorbitant and unconscionable prices therefor and at prices which were greatly in excess of

the market value thereof by fraudulently and dishonestly concealing from said respective owners and without knowledge on their part that said contracts and agreements were contracts and agreements for the purchase by them respectively of real estate and lots of ground from said Cummings Brothers Funding Company; and by means of attempting to obtain and obtaining from said certain persons and owners respectively, by means of trickery, fraud and deceit, possession only, of divers other good, valuable and marketable securities and certificates of capital stock of divers corporations for said Cummings Brothers Funding Company as bailee only thereof for said respective owners thereof; and by means of attempting to obtain and of obtaining the respective signatures of said owners of said securities to authorizations in writing or letters or powers of attorney of said respective owners of said securities, to sell, assign and transfer said securities and certificates of stock, and by divers false pretenses and representations to be made to said owners of said good and valuable and marketable securities that it was necessary and that it was required of them respectively to have the same deposited by them as collateral security only, to enable the said Cummings Brothers Funding Company to obtain and recover for said respective owners of said valueless and worthless securities the cost price and prices therefor obtained from said owners thereof respectively as aforesaid, with the intent fraudulently and feloniously to sell, assign, transfer and convert said good and valuable securities which might be obtained from said owners thereof by the means aforesaid, to and for the use of the said Cummings Bros. Funding Company and its officers, and to and for the use and benefit of him the said Morris Berman alias Morris Barton and of the officers, agents and employees of the said Guaranty Company of America; and by means of the fraudulently making and signing and of the procur-

ing to be fraudulently made and signed and of knowingly uttering as true divers written instruments, to wit, divers fraudulently written agreements, and sales contracts for the purchase of the real estate and lots of ground therein specified and therein fraudulently showing that said certain good and valuable securities and said worthless securities, possession of which had been so fraudulently obtained from said owners thereof respectively as aforesaid, had been respectively paid by them to the said Cummings Brothers Funding Company on account of the consideration and price for the purchase of said certain ground by them respectively from the said Cummings Brothers Funding Company; and by means of the fraudulent and felonious conversion, misappropriation and misapplication of said marketable securities which might be so fraudulently obtained from said respective owners thereof, to and for the use and benefit of the said Cummings Bros. Funding Company and to and for the use and benefit of him the said Morris Berman alias Morris Barton, and of the said Guaranty Company of America and their respective officers, agents and employees; and by divers other unlawful, false, fraudulent, wilful, malicious, dishonest, deceitful and corrupt means, devices and contrivances; to the prejudice and great damage of the said George W. Brady, Esther Brady, Nannie C. Gonso nee Klipp, Margaret C. Russell, Marianne L. Russell, William J. Kinsey, Dorson C. Cole, Harry O. Ayer, William Arnold, Ross W. Brown, Anna Bromiley, George H. Hogan, Ada R. Plessinger, Katherine L. Eaton, Anna Eaton, Mary P. Jones, M. J. Renehen, respectively, and a large number of other persons respectively whose names were included in the certain list aforesaid but whose names are to this Grand Inquest as yet unknown as aforesaid: contrary to the form of the Act of the General Assembly, in such case made and provided, and

against the peace and dignity of the Commonwealth of Pennsylvania."

The second count charges the appellant and others, as in the first count, with conspiracy to steal "divers sums of money and divers good, marketable and valuable securities and certificates of shares of Capital Stock of divers corporations, altogether of the value of, to wit, two hundred and fifty thousand dollars and upwards in lawful money of the United States, of the moneys and property, respectively," of the individuals named therein, being the same as those in the first count of the indictment. Of the remaining thirty-four counts, each odd numbered count charges the appellant and others, in the same manner as in the first count, with conspiring to cheat and defraud a certain named individual of the moneys and property of that individual, and sets forth the specific sums of money and property of which, it is alleged, that individual was defrauded; and each even numbered count charges the appellant and others with conspiring to steal from a certain named individual of the moneys and property of that individual, which are specifically set forth in that count of the indictment. In other words, each odd numbered count charging conspiracy to cheat and defraud has a corresponding even numbered count charging conspiracy to steal.

Four of those indicted, Morris Berman, the appellant, William H. Cummings, Albert B. Itsynson, and Albert Kravitz, were tried together. Cummings and Itsynson were acquitted. The appellant was found guilty on all of the counts of the indictment except the following: third, fourth, fifth, sixth, seventeenth, eighteenth, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, thirty-third, and thirty-fourth, which were withdrawn from the jury; and Kravitz was found guilty on the second, twentieth, twenty-seventh, and twenty-ninth counts of the indictment only.

The appellant was sentenced, on the first count of the indictment charging conspiracy to cheat and defraud, to pay a fine of "$100 to the Commonwealth of Pennsylvania for the uses provided by Statute, and undergo imprisonment in the Eastern State Penitentiary at solitary confinement at hard labor for not less than one nor more than two years......" The same sentence was imposed on the seventh count of the indictment, this sentence to be computed from the termination of the sentence on the first count. A similar sentence was imposed on the twenty-ninth count, same to be computed from the expiration of the sentence imposed on the seventh count. A similar sentence was imposed on the thirty-first count, same to be computed from the expiration of the sentence imposed on the twenty-ninth count.

On the ninth, eleventh, thirteenth, fifteenth, nineteenth, twenty-first, and twenty-seventh counts, the same sentence was imposed as on the first count, the sentences thereon to run concurrently with the sentence imposed on the first count. No sentence was imposed by the court on the counts charging the appellant with conspiracy to steal, or on the thirty-fifth count charging conspiracy to cheat and defraud.

The case was well and carefully tried, and it is our opinion that the conviction ought to stand, unless there is reversible error, as the voluminous record plainly shows that the appellant was guilty of conspiracy to cheat and defraud. The evidence shows in detail the means employed in the consummation of the fraudulent purpose, and the overt acts committed in pursuance of the conspiracy.

Twenty-four assignments of error have been presented by the appellant. We shall consider them in four groups.

First: The fifth and sixth assignments of error relate to the admission of testimony of Samuel Wendkos,

a witness for the Commonwealth. He was one of those indicted, and pleaded guilty. This testimony relates a conversation which took place between the appellant, Berman, and the witness, Wendkos, some months before the inception of the alleged conspiracy. The witness testified that he had known Berman for twenty years, and described how he came to engage in business with the appellant in January, 1931. The principal portion of this conversation, the admission of which is assigned as error, is as follows: "Q. What did Berman say to you when you asked him for a job? A. He said to me that if I worked hard and went out and saw a number of clients that I could earn fifteen thousand a year, selling lots. He also said to me at the time that if I could get used to hearing complaints that I could go in that business and earn that amount of money. I asked him about the complaints and he said that a lot of people usually welched after they bought property; but the selling is made strictly legitimate and 'You can't stop complaints.' I said, 'As long as he says to me that the business was legitimate that I was willing to go with him.' "

The appellant contends that the testimony of Wendkos was inadmissible because thereby the Commonwealth was permitted to prove declarations made by the appellant prior to the commencement of the alleged conspiracy, and having no relation thereto. We think this evidence was admissible. It shows under what circumstances these two men came together and engaged in the real estate business. The witness became an employee of the appellant, at that time, in his real estate business, which ultimately became the subject of the conspiracy for which both the appellant and the witness were indicted with others.

This conversation between the appellant and the witness was sufficiently related to the conspiracy charged as to be admissible in evidence. "When two men are

jointly accused of co-operating in the commission of conspiracy to commit a crime, evidence of their previous acquaintance is competent and material, although the fact that they participated in the conspiracy may not be predicated upon such testimony alone": Com. v. Jermyn et al., 101 Pa. Superior Ct. 455, 470.

It was competent for the Commonwealth to show how the various defendants became associated, and it was proper to show the background of the arrangement which resulted in this prosecution. "A large discretion is allowed to the presiding judge in the admission of evidence on a trial for conspiracy having numerous actors and shifting scenes of action as the fact of conspiracy is often made out by the association of detached facts and by the reasonable inferences deducible therefrom": Com. v. Moyer, 52 Pa. Superior Ct. 548, pp. 554, 555.

We find no reversible error in the admission of the testimony of the Commonwealth's witness, Wendkos.

Second: The appellant's next contention relates to the admission in evidence of a statement made by William H. Cummings, one of the defendants, who was indicted and tried with the appellant. This testimony is the subject of the eighth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth assignments of error. Appellant contends that the admission of the Cummings statement was reversible error for the reason that it was not a statement made by an alleged co-conspirator in furtherance of the alleged conspiracy; that it was made after the termination of the alleged conspiracy; and that it contained expressions of opinion and other remarks very unfavorable and harmful to appellant's case.

The statement was voluntarily made by Cummings on August 31, 1933, in the office of the district attorney. In the statement Cummings gave his version of his connection with the questionable real estate transac-

tions. He narrates his first meeting with the appellant, Berman, and the subsequent execution of an agreement on January 28, 1932, between the Cummings Brothers Funding Company, of which he was president, and the Guaranty Company of America, which was to act as a broker in the sale of lots owned by the Cummings Brothers Funding Company along the New Jersey coast. He therein states that his company was to receive 12½ per cent. of the bond price set on the lots by the Fidelity Land Valuation Company, later the National Realty Corporation Company; that complaints came to him as the result of the transactions by the Guaranty Company of America; that, as a result thereof, he was called to Harrisburg and his real estate broker's license revoked; that, following other complaints, he was arrested; that he disclosed to the Guaranty Company of America that taxes on the lots in New Jersey were unpaid; that taxes were paid only if a purchaser paid in full and a deed was delivered; that on the execution of contracts with purchasers the unpaid taxes were not disclosed; that the worthless securities obtained from prospective purchasers were never put on the contracts; that the valuation of his lots was not made on present prices, but on anticipated values ten years hence; that the Cummings Brothers Funding Company received about $14,000 from the transactions with the Guaranty Company of America; that he visited at the office of the Guaranty Company of America nearly every day; that he knew of a sales talk known as the "opener"; that he was willing to sell his lots for 12½ per cent. of the amount paid by the customer, and that such amount represented a fair compensation to his company for the lots sold, because they had been repossessed; that checks of his company and checks of the Guaranty Company of America were countersigned by the same individual; that he was familiar with the "sucker list"; that there were two

classes of salesmen or brokers, to wit, "pick-up" or "package" men, and "closers."

In this rather lengthy statement, Cummings gives his version of the method of operation of the enterprise; his knowledge of, and acquaintance with, the various parties involved; and his story of his participation during the period of activity. The portion of this statement to which the appellant especially objects is as follows: "Q. Was it, or was it not, your opinion that the scheme operated by Berman was crooked? A. I will answer that in this way. If I had known I was entering into an agreement that was ultimately to turn out the way it did turn out, I would not have entered it. Q. In your opinion it proved unfair and unethical? A. Yes, it proved unfair and unethical to customers. Q. A scheme to defraud customers? A. Well—(addressing his counsel) shall I go that far? It was not on my part. Q. It proved to be a scheme by the Berman group to defraud customers? A. To my knowledge, after disclosing their methods, I would say that is correct."

It is well settled, as the appellant argues, that the acts and declarations of a conspirator are admissible against a co-conspirator only if made during the existence of the conspiracy and in furtherance of its object. Com. v. Donnelly, 40 Pa. Superior Ct. 116; Com. v. Dibella et al., 72 Pa. Superior Ct. 360; Com. v. Stambaugh, 22 Pa. Superior Ct. 386; Com. v. Bingle, 62 Pa. Superior Ct. 105; Com. v. Strauss, 89 Pa. Superior Ct. 82. However, acts and declarations of a conspirator, although made after the conspiracy, are always admissible against the person making them, the jury being instructed to disregard them so far as they refer to other persons. Com. v. Snyder, 40 Pa. Superior Ct. 485, 227 Pa. 346; Fife et al. v. Com., 29 Pa. 429; Com. v. Dibella et al., supra; Underhill's Criminal Evidence,

3d Ed. (1923), §719, p. 963, ff. The statement was unquestionably admissible as to Cummings.

A statement by one of several codefendants which is in the nature of a confession is admissible in evidence under proper instructions, although such a statement may indirectly influence the minds of the jury against the other defendants on trial. Fife et al. v. Com., supra; Brandt et al. v. Com., 94 Pa. 290; Com. v. Hudson, 269 Pa. 176, 112 A. 434. The mere fact that evidence legally admissible against one of several defendants may prejudice his codefendant is no reason for its exclusion. Fife et al. v. Com., supra; Com. v. Parker et al., 294 Pa. 144, 143 A. 904; Com. v. Bernstine, 308 Pa. 394, 162 A. 297.

The Cummings statement set forth what he said he knew of the conspiracy charged, and his version of his connection with it. Such a voluntary statement by a defendant is admissible against him, although it may not contain an unqualified admission of guilt. Com. v. Tenbroeck, 265 Pa. 251, 108 A. 635; Com. v. Elliott, 292 Pa. 16, 140 A. 537. The statement by Cummings, that the scheme with which he was connected proved unfair and unethical and a scheme to defraud customers, was relevant and admissible, although he endeavored to impute the fraud to what he called the "Berman group." It might properly be inferred from his statement that he knew more about the scheme than he disclosed. The evidence being relevant, it was immaterial that the statement contained an expression of opinion by Cummings which might be detrimental to the appellant, a codefendant; and it was admissible if sufficiently limited by proper instructions. Com. v. Hudson, supra.

We think that this was done. The district attorney, in reading the portions of the statement (quoted supra) to the jury, said: "May I state that the remainder of the statement about to be read by me is read to the

jury with the intent that it shall be received only as regards the defendant Cummings, and with the further intent that it shall not be taken to have any relation to any other defendant whatsoever, and that it is not being read in relation to the case of the Commonwealth against any one but the defendant Cummings." In this connection the court below, in its opinion refusing defendant's motion for a new trial, has stated: "The evidence offered and received was a confession by the defendant Cummings concerning his part in what he reluctantly admitted to be a conspiracy. It was offered in evidence as to Cummings only, the district attorney so stating, and it was so received by the Court as the record shows...... Its limited scope was further commented upon in the district attorney's address to the jury. Its weight and effect, as so limited, were properly for the jury...... While it is true that this testimony was limited to the effect that it might have on the defendant Cummings, this was clearly stated in the presence of the jury, at the time of offering, by the district attorney, and at the time of ruling of the Court receiving it in evidence. And while it is perfectly true that the jury should have been informed that it applied only to Cummings, this had been so stated by the district attorney and the Court at [in] their hearing, and further, at the close of which [charge] Counsel was asked if anything had been overlooked or misstated, at which time had Counsel for defendant required particular instructions on this subject, instructions might have been requested [given]." The record shows that this is a correct statement of what occurred. The assignments of error are overruled.

Third: The sixteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-first, twenty-second, and twenty-third assignments of error relate to the sentence imposed upon the appellant by the court below.

It is the appellant's contention that only one offense

is charged in the indictment of which the appellant could have been found guilty—namely, a conspiracy to cheat and defraud,—it being admitted that the same, acts could not constitute a conspiracy to cheat and defraud and at the same time a conspiracy to steal,— as charged in the first count; that the other counts upon which sentence was imposed did not constitute separate offenses; and that the sentences imposed on all counts other than the first should be vacated.

The appellant was found guilty on all the counts of the indictment except the third, fourth, fifth, sixth, eighteenth, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, thirty-third, and thirty-fourth. As heretofore stated, the appellant was sentenced, on the first, seventh, twenty-ninth, and thirty-first counts of the indictment, cumulatively. The sentences on the other counts were to run concurrently with the sentence imposed on the first count. We are of the opinion that the indictment charged but one offense of which the appellant could have been found guilty—namely, conspiracy to cheat and defraud, as set forth generally in the first count of the indictment. The other odd numbered counts simply enlarged upon the general charge of conspiracy to cheat and defraud as set forth in the first count. Such counts set forth nothing other than what was charged against the appellant in the first count of the indictment, except to give in detail the value, amount, and kind of securities of which each individual person was defrauded. There was not a separate, new, and distinct conspiracy entered into by the appellant as to each individual defrauded. Such acts as charged in the various odd numbered counts, subsequent to the first, were, as to the appellant, all parts of one conspiracy to cheat and defraud. See Com. v. Girardot, 107 Pa. Superior Ct. 274, 163 A. 362. The frauds that were to be perpetrated as charged in such counts of the indictment were, when consummated, the

results of the unlawful combination. Such overt acts are also the evidence from which a conspiracy may be inferred. See Com. v. Bartilson et al., 85 Pa. 482; Com. v. Strauss, supra; Com. v. Sanderson, 40 Pa. Superior Ct. 416; Com. v. Snyder, supra.

The court below, in its opinion refusing defendant's motion for new trial, says: "The first two counts charge general conspiracy; first, to cheat and defraud, and second, to steal. The remaining thirty-four counts in the uneven numbered counts charge specific instances of conspiracy to cheat and defraud, and the even numbered counts charge specific instances of conspiracy to steal—but all a part of the general scheme...... Here was a general conspiracy to cheat and defraud, not particular individuals had in mind at the inception of the scheme, but such of the general public as might from time to time, through stock lists, be ascertained to possess stock of questionable or no value, and who might, through contacts made by agents sent out in furtherance of the general scheme, fall victims to the scheme. The conspiracy to do all of these acts constitutes one crime under the law, and, the doing of each individual overt act constitutes a separate offense, but such offense is a part of the general conspiracy."

We are unable to agree with the above conclusions of the court below. The frauds consummated were not constituent elements of the offense of conspiracy charged in the indictment. They are overt acts, and they are evidence from which the conspiracy may be inferred. They may also be regarded as a matter of aggravation of it. An overt act may or may not be unlawful, per se. Com. v. Bartilson et al., supra. On an indictment and conviction for conspiracy to cheat and defraud, the defendant cannot be sentenced for the overt acts done in pursuance of the conspiracy, even though they may be unlawful, per se, unless specifically

indicted and convicted of such crime as may have been committed by him in the doing of such overt act.

This same question was considered, in an opinion by Judge CUNNINGHAM, in the case of Com. v. Williams and Breese, 102 Pa. Superior Ct. 216, 156 A. 711. In that case we held there was but one conspiracy to cheat and defraud charged in the indictment, as set forth in the first count, and that the subsequent counts merely set forth the overt acts charged. This court there stated, p. 222: "In Com. v. McKisson, 8 S. & R. 420, 421, it was said that 'in conspiracy, the confederating is the gist of the offense, and as no overt act is necessary to complete it, none need be laid.' After stating that it is essential to set forth in the indictment that the object of the confederation was an unlawful one, the opinion continues: 'But in stating the object it is unnecessary to state the means by which it was to be accomplished or the acts that were to be done in pursuance of the original design; they may, in fact, not have been agreed on.' However, if the means by which a conspiracy has been executed are known to the pleader, it is proper practice, as we have said, to outline them in the indictment. When, as here, overt acts are 'charged and subsequently sustained by proof, they [may be] regarded as matter of aggravation of the criminality of the unlawful combination, or merely as proof of the intent. In construing the indictment they could be disregarded as surplusage': 5 R. C. L., Sec. 27, p. 1081."

We are all of the opinion that the appellant could not properly be sentenced under the indictment and verdict to pay a fine in excess of $500, and that his imprisonment cannot be beyond a term of from one to two years. Act of March 31, 1860, P. L. 382, §128 (18 PS §2451); Act of June 19, 1911, P. L. 1055, §6, as amended by Act of June 29, 1923, P. L. 975, No. 397, §1 (19 PS §1057).

Fourth: There remains for our consideration the first, second, third, fourth, seventh, fifteenth, and twenty-fourth assignments of error. The matters raised by the appellant in his assignments of error one, two, three, four, seven, and fifteen require no discussion by us. They relate to the refusal by the trial judge to permit certain cross-examination of Commonwealth's witnesses by counsel for the appellant. We have considered these assignments, and we are of the opinion that the trial judge properly ruled on the questions as asked by the counsel for the appellant on the cross-examination of the witnesses for the Commonwealth. The scope of cross-examination, to a very large extent, is a matter within the sound discretion of the trial judge. Com. v. Barille, 270 Pa. 388, 113 A. 663; Com. v. Brown et al., 116 Pa. Superior Ct. 1, 175 A. 748; Littieri v. Freda, 241 Pa. 21, 88 A. 82; Gallagher v. Philadelphia Rapid Transit Company, 248 Pa. 304, 93 A. 1074; Valentine, Exr., v. Federal Life Insurance Company, 111 Pa. Superior Ct. 311, 169 A. 387.

The twenty-fourth assignment of error is to the refusal, by the court below, of the defendant's motion for a new trial. We find no ground upon which a new trial should be granted.

These assignments of error are overruled.

The conviction is affirmed, but, to the extent that the sentence appealed from exceeds the punishment herein indicated, the assignments of error are sustained.

The record is remitted to the court below, with directions to proceed to sentence the appellant anew in due order and according to law.