## Jackson *et al. versus* Litch.

1. Cross-examination must be confined to the matters stated in the examination in chief.

2. A party cannot lead out new matter constituting his own case by the cross-examination of his adversary's witness.

3. Allowing new matter to be brought out on cross-examination is generally considered as within the sound discretion of the court below.

4. In order to reverse for this cause, it must be an extreme case, in which the discretion has been abused and in which it is apparent the party has been injured.

5. Where a witness has stated a fact, he may be asked by the other party to detail all the circumstances within his knowledge which qualify it, though they may be new matter and form part of his own case.

6. By a written agreement, afterwards abandoned, J. was to pay L. $3250 for certain privileges on L.'s dam, and L. was to repair the dam; $1250 of the sum to be paid " as the work progressed on the dam." A witness who drew the agreement might prove that $2000 were for the privileges and the balance for repairing the dam.

7. L. by writing granted to J. certain privileges on his land and dam, L. to repair the dam; afterwards it was agreed by parol that L. instead should build a new dam for which J. should pay half the cost. *Held*, that this latter agreement was not within the Statute of Frauds.

[Jackson *v*. Litch.]

October 22d 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Jefferson county :* No. 81, to October and November Term 1869.

This was an action of assumpsit brought, November 15th 1866, by Thomas K. Litch against Jake Hill, A. Jackson, A. F. Baum and John Carrier, partners, trading as Jackson, Carrier & Co. The declaration was for half the price of a bracket dam on the North Fork creek, in Jefferson county, which it had been agreed should be built by the plaintiff at the joint expense of plaintiff and defendants. The declaration contained also the common counts.

The plaintiff (with one Miller who afterwards, November 6th 1857, conveyed to plaintiff his interest) owned a saw-mill and timber .lands on the North Fork creek, a highway in Jefferson county, on which was a dam known as the "Big Dam," designed to "bracket" their lumber to their mill. At the same time Hollenback, Coryell & Co. owned a saw-mill on the same stream, and timber lands adjoining the upper lands of Litch & Co. On the 25th of January 1856 Litch & Co. entered into an agreement with Hollenback, Coryell & Co., by which Hollenback & Co. were admitted to equal privileges in the "Big Dam," and were to be allowed to pass over and place their timber on Litch's land, on the bank of North Fork creek ; the privileges granted not to interfere with Litch's lumbering operations. In consideration, Hollenback & Co. agreed to pay Litch $1250, as in the agreement was specified, and Hollenback & Co. were to allow Litch to use their landings for lumbering purposes, under the same restrictions imposed on Hollenback & Co. with respect to Litch's landings ; the parties to keep up the "Big Dam" at joint expense. It was further agreed that if Hollenback & Co. should sell their lumbering establishment, Litch might resume the privileges on refunding the $1250, and the agreement was then to be void.

On the agreement were endorsed receipts for the payment of the $1250 and its interest. On the 24th of December 1863 Hollenback & Co. sold all their timber lands, mills, &c., to the defendants, and agreed to assign to them the agreement with Litch "for the privilege of landing on the creek on his lands and Big Dam."

Hollenback & Co., on the 24th of December 1863, assigned the agreement with Litch by an endorsement on it.

On the 8th of March 1864 Litch, by writing, gave notice to the defendants that he wished to resume the privileges under the agreement of 1856, " and also to confer with (them) as to repairing the dam."

On the 10th of August 1864 Litch entered into an agreement with the defendants that he would repair the "Big Dam," and

[Jackson v. Litch.]

after its repair allow the defendants to use it "for the purpose of bracketing their logs and timber down the stream, Litch reserving the right to use the dam for all other purposes," both parties to be " equally bound" to maintain the dam in good repair; Litch to put the " bottom in the dam this fall and complete it next season, and insure it for one year against ordinary freshets." Litch further stipulated that the defendants might pass over and pile logs on his land on the creek; Litch to have a similar right on the defendants' land. In consideration the defendants were to pay Litch $3250, viz., $500 in thirty days, $500 on April 1st, and $500 on August 10th 1865, $500 on August 10th 1866, and " $1250 as the work progresses on the dam;" no assignment of the agreement to be made by the defendants until they shall have paid to Litch the $3250.

On this agreement was endorsed a receipt, September 21st 1864, for $500, signed " Thos. K. Litch, per Robert Stewart;" and another, July 31st 1865, for $1500, signed " Thos. K. Litch, per Darling."

On the trial, February 16th 1869, before Campbell, P. J., the plaintiff gave evidence by Robert Stewart that " after the writing was abandoned" Litch told him to go on and rebuild the old dam; in witness's judgment it was not worth repairing, and he so told the parties, plaintiff and defendants. Jackson, one of the defendants, said a new dam would be better, and all agreed to go on and build a new dam, and witness was to build it; the plaintiff was to pay one half and the defendants the other half. The dam cost $4720.74, which the plaintiff paid. There was other evidence of the agreement of the defendants that a new dam should be built instead of repairing the old one, and that they would pay half the cost.

The defendants gave evidence tending to show that there was no agreement to build the new dam, and that the claim for rebuilding was too much. Stewart and Darling respectively testified for the defendants that they had authority from the plaintiff to receive the money for which the receipts endorsed on the agreement were given. On cross-examination they testified, under objection by the defendants and exception, that these payments were received for the privileges granted by the article, and not for building the new dam.

Darling, in rebuttal, under objection by the defendants and exception, testified: " I drew that agreement 10th August 1864;' $2000 consideration, applicable to grant of landing and other privileges, and the balance was for repairing the dam; that was what the contract was; explained to me."

The following are points submitted by the defendants and the answers, viz.:—

4. " From the evidence the contract for the new dam would be

such an interest in land as would be subject to the provision of the Statute of Frauds and Perjuries. That it has not been sufficiently executed to take it out of the provisions thereof, and the plaintiff not having tendered any conveyance before bringing suit to enforce the contract, he is not entitled to recover."

Answer: "If there was a simple contract resting in parol, by which the defendants agreed to pay half the expense of erecting this dam, it is not within the Statute of Frauds and Perjuries, that we can see, and we answer the point in the negative."

5. "The article of the 10th of August 1864 is still of binding force, and the defendants would be entitled to a set-off thereon for whatever amount it would cost to repair the old dam in such a manner as to insure it for one year, if alleged parol contract is found to be binding on the defendants."

Answer: "We answer this point, handed us just before charging the jury, that we can't see that the article is rescinded, or at all affected by the contract alleged by plaintiffs, unless that contract is a modification of the covenant in the article, and in that event plaintiff cannot recover. Being in full force, the defendants would be entitled to a set-off for all the damages they have sustained, if any, in consequence of the dam not being repaired as provided in the article. Thus we answer this point in the affirmative."

6. "T. K. Litch having given notice of his desire to rescind the contract with Hollenback, Coryell & Co., and having entered into a new contract with these defendants for a different consideration under the terms of the contract with Hollenback, Coryell & Co., the last-mentioned contract was rescinded, and T. K. Litch would be liable to refund the consideration thereof to these defendants as assignees of Hollenback, Coryell & Co."

This point was filed and endorsed as follows:—

"Offered after counsel for plaintiff had gone to the jury, the court declining to answer within point."

The verdict was for the plaintiff for $2360.35.

The defendants having removed the case to the Supreme Court, assigned for error:—the admission of the evidence in the bills of exceptions; the answers to their 4th and 5th points; and refusing to answer their 6th point.

*Arthurs, Jenks,* and *Jenks & Clark,* for plaintiffs in error.— Cross-examination should be confined to testimony given in chief: Helser *v.* McGrath, 2 P. F. Smith 533; Breinig *v.* Metzler, 11 Harris 157. A written contract cannot be construed by parol: Fisher *v.* Deibert, 4 P. F. Smith 463; Fox *v.* Foster, 4 Barr 119; Cummings *v.* Antes, 7 Harris 287; Heebner *v.* Worrell, 2 Wright 379; Gottsman *v.* Penn. Ins. Co., 6 P. F. Smith 214. The rights under the article were an interest in land, and within

[Jackson v. Litch.]

the Statute of Frauds: Bouvier's Law Dict., 457; Huff v. McCauley, 3 P. F. Smith 206; Ritger v. Parker, 8 Cushing 145; Collam v. Hocker, 1 Rawle 111; Yeakle v. Jacob, 9 Casey 376; Wilson v. Clarke, 1 W. & S. 558. The 5th point was not fully answered: Penna. Railroad v. Zebe, 9 Casey 323. For the breach of a contract some damages are recoverable; and the qualification "if any" in the answer was therefore error: Holler v. Weiner, 3 Harris 244; Forsyth v. Palmer, 2 Id. 97. The 6th point should have been answered: Noble v. McClintock, 6 W. & S. 58; North Whitehall Township, 11 Wright 161; Act of April 17th 1856, § 3, Pamph. L. 396, Purd. 164, pl. 155. The court was bound to put a construction on the writings: Miller v. Fitchthorn, 7 Casey 256; Reamy v. Culbertson, 9 Harris 512.

*Gordon & Brother*, for defendants in error.

The opinion of the court was delivered, January 3d 1870, by

SHARSWOOD, J.—The first assignment of error is that the court permitted two witnesses, called by the defendants below, who are the plaintiffs in error, to prove that they respectively had authority from the plaintiff to receive certain sums of money for· which they had given receipts, to be asked in cross-examination what the money was received for. It is certainly well settled in this state that cross-examination must be confined to the matters which have been stated in the examination in chief. A party will not be permitted to lead out new matter, constituting his own case, by the cross-examination of his adversary's witnesses: Ellmaker v. Buckley, 16 S. & R. 72; Floyd v. Bovard, 6 W. & S. 75; Mitchell v. Welch, 5 Harris 339; Turner v. Reynolds, 11 Harris 199. Yet I have not been able to find a single case in which this court has reversed on that ground. It has generally been considered as a matter within the sound discretion of the court below, and in Schnable v. Doughty, 3 Barr 392, though the Supreme Court thought that the rule had been violated they distinctly refused to reverse. In Helser v. McGrath, 2 P. F. Smith 531, the present Chief Justice remarked, "These rules, as well as all others on the order of examination of witnesses and the introduction of testimony, have for their object the eliciting of truth and the preservation of the equality of the rights of parties in trials in courts. Much, however, must still be left to the discretion of the judge. Neither the rule nor the exception must be allowed, if it can be prevented, unduly to prejudice the parties. The exercise of a prudent discretion by the judge is the only guard against this in many cases. Although we will not reverse in this case for an excess of latitude in the cross-examination, because we do not discover the injury from it, yet we think it was very great and beyond the limits of the authorities generally. Doubtless the

learned judge thought he saw the propriety of allowing it and, we cannot say he was wrong, for we have not his means of judging." It may be concluded from these authorities that in order to reverse, it must be an extreme case, in which discretion has been abused and in which it is apparent that the party has been injured. This case is certainly not of that character. The question propounded to the witness was indeed within the latitude heretofore conceded; for where a witness has stated a fact, he may be asked by the other party to detail all the circumstances within his knowledge which qualify it, even though they may constitute new matter and form part of his own case. This the authorities clearly establish: Perit *v.* Cohen, 4 Whart. 81; Markley *v.* Swartzlander, 8 W. & S. 172. "A party," says C. J. Gibson, "is entitled to bring out every circumstance relating to a fact which an adverse witness is called to prove:" Bank *v.* Fordyce, 9 Barr 277.

The second error assigned was in permitting a witness, who drew the agreement for both parties, to prove that part of the consideration stipulated to be paid, was for certain landing and other privileges, and the balance for repairing the dam. It is argued that this evidence contradicted or varied the terms of the writing, but clearly this was not so. It was a fact entirely outside of the paper. The articles provided that certain instalments should be paid at fixed periods, "and $1250 as the work progresses on the dam." The allegation of the plaintiff below was that by a subsequent verbal agreement the repairing of the dam was abandoned and a new dam agreed to be built under a new arrangement, by which each party was to pay half the cost. It was not then contradictory to the agreement, but consistent with it to prove that the $1250 to be paid as the work progressed on the dam was the agreed consideration for that part of the plaintiff's undertaking.

The third assignment of error is to the answer of the court to the fourth point of the defendants below, in which the jury were instructed that "if there was a simple contract resting in parol by which the defendants agreed to pay half the expense of erecting this dam, it is not within the Statute of Frauds and Perjuries." So far as the defendants had an incorporeal right of easement, it was secured to them by the written agreement. The contract sued upon was to substitute a new dam for the old one which the plaintiff had agreed to repair. In Le Fevre *v.* Le Fevre, 4 S. & R. 241, it was expressly held that parol evidence is admissible to prove that after the execution of a deed conveying a right to a watercourse through the granted land by courses and distances, a verbal agreement was entered into between the parties for their mutual accommodation, altering the route of the watercourse, provided the agreement has been carried into effect. In the case

[Jackson v. Litch.]

before us the agreement was carried into effect by building the new dam. The authority is therefore in point.

The fourth error assigned is to the answer of the court to the defendants' fifth point. This point was substantially affirmed. It was based upon the assumption that both the written agreement to repair the old dam and the verbal agreement to build a new one were binding, and asked the court to charge that defendants would have a right to set off whatever amount it would cost to repair the old dam. The court said that they would have a right to set off for all the damages they had sustained if any. The plaintiff might have reason to complain of this instruction, but surely not the defendants. If the new contract was proved to the satisfaction of the jury and was binding, it was a substitution of a new for the old dam, and there was no right to any set-off for not repairing the old dam.

No injury was done to the plaintiffs in error by the refusal of the court to answer their sixth point. It ignored all the evidence in the case from which the jury would have had a right to infer that the agreement of August 10th 1864 was a new arrangement between the parties substituted for and designed to take the place of the original agreement of January 25th 1856, if indeed on the construction of the papers themselves, such was not their legal effect.

Judgment affirmed.