Valentine, Exr., Appellant, *v.* Federal Life
Insurance Company.

Argued November 21, 1933.

Before KELLER, CUNNING-HAM, BALDRIGE, STADTFELD and JAMES, JJ.

*William I. Stanton*, for appellant.

*Harry S. Ambler, Jr.*, and with him *Frank R. Ambler* and *Henry S. Ambler*, for appellee.

OPINION BY STADTFELD, J., December 16, 1933:

This is an appeal by plaintiff from the order of the court below refusing plaintiff's motion for new trial and in entering judgment on the verdict in favor of defendant.

An action of assumpsit was brought on an accident insurance policy, which insured decedent, Frederick Chas. Matchett, against "death or disability resulting directly or independently of all other causes from bodily injuries sustained through external, violent and accidental means."

On Monday, February 16, 1931, about 8 A. M., decedent while crossing Market Street at Sixteenth Street, Philadelphia, was accidentally struck by an automobile and was thrown a distance of approximately five feet. At the time of the accident the decedent was on his way to City Hall where he was employed as a clerk in the Bureau of City Property,

and where he had been so employed for nine or ten years previous to his death. Decedent was picked up and seemed to be in a very excited and nervous condition. He went to the office, however, on the day of the accident (Monday), but was very nervous and complained of pains in his side until Wednesday on which day he left the office. A physician was summoned the following day at which time the decedent was suffering from a fully developed case of pneumonia of the left lung extending to the right lung. Decedent died on February 25, 1931 (nine days after the accident). An autopsy was performed by the coroner's physician, Dr. Richard D. Burke, but there were no visible marks of injury on decedent's body at the time the autopsy was made and the coroner's verdict was that the deceased died from pneumonia. It was conceded by both plaintiff and defendant that the decedent died from pneumonia the only question being whether the pneumonia was the result of the accident which he had sustained.

The testimony showed that the decedent at the time of his death was a man of about fifty-four or fifty-five years of age and had been in excellent health for many years prior to the accident.

Dr. Henry V. Marvel and Dr. Leo Strousse, both called by the plaintiff, testified they were of the opinion that the lobar pneumonia was produced by the accident, or was traumatic in origin, even though there were no signs of injury on the body at the time the autopsy was performed.

Dr. Burke, the coroner's physician who performed the autopsy, was called by the plaintiff and gave the cause of death as lobar pneumonia, plaintiff asking no further questions.

On cross-examination, he was permitted to testify, without objection, that he made the autopsy for the purpose of determining the cause of death, and that there was no evidence of any injury except a slight

discoloration on the right forehead, that there was no evidence of any injury about the chest, the chest walls, to the lungs or to the pleura; that he found no evidence of injury that caused death. He was then asked by defendant's counsel, "Was there any evidence of traumatic pneumonia in this case? This question was objected to but the objection overruled and exception noted. The cross-examination then proceeded as follows: "A. I saw none. Q. That is what you made the autopsy for? A. I was looking for it. Q. Now, lobar pneumonia is a germ disease? A. Yes. Q. Develops from —. A. Really, a germ. Q. Lobar pneumonia does not result from injury, does it? A. If the germ is not there, it would not be lobar. By the court: Q. How quickly does pneumonia develop? A. Very rapidly, in a few hours to a few days. By Mr. Ambler (attorney for defendant): Q. You say pneumonia does develop within a few hours? A. Rapidly. Q. Then, as a result of your examination and your conclusions, doctor, I understand that you found nothing but a croupous pneumonia that caused this death and found nothing there to indicate that it resulted in anywise from an accident? A. That is what I would say. By Mr. Stanton (plaintiff's attorney): Q. But you do say, doctor, that an injury might produce pneumonia, if the pneumonia germ was there? A. I said it was specific lobar pneumonia. Q. But you do say that an injury might produce pneumonia? A. If the germ was present. Q. You said that he had evidence —. A. No evidence of trauma or injury."

The case was submitted to the jury in a fair and comprehensive charge by DAVIS, P. J., with instructions to determine whether decedent sustained an injury on February 16 when he came in contact with the automobile, and whether the injury caused the pneumonia and if satisfied that the insured died as the result of some injury which he sustained on February 16, causing this pneumonia, then his executor,

the plaintiff here, would be entitled to recover the amount of the policy with interest from February 25, 1931; and if they believed that the pneumonia causing the death had no connection with any injury which might have been sustained, then the verdict should be for the defendant. No exception was taken to the charge. The jury rendered a verdict in favor of defendant.

The only assignments of error are (1) to the overruling of the objection to the question asked Dr. Burke, a witness called by plaintiff, on cross-examination, viz: "Was there any evidence of traumatic pneumonia in this case?" and in permitting him to testify in answer to said question, "I saw none;" (2) in overruling plaintiff's motion for new trial and (3) in entering judgment on the verdict.

The theory of plaintiff's case was predicated on the assumption that the death of the insured was caused by traumatic pneumonia, induced by the collision with an automobile nine days before his death, and not by some of the other causes from which pneumonia results; and that therefore, under the terms and conditions of the policy, the death of the deceased was caused by external, violent and accidental means.

The only question to which objection was made, and exception taken to the ruling of the court, was the one specified supra.

Appellant contends that Dr. Burke was not called as an expert on the question of the causes of pneumonia, or whether or not the decedent died as a result of traumatic pneumonia, but his examination was confined exclusively to his finding as coroner's physician as to the *cause of death,* and that the cross-examination should have been restricted to the matters testified in chief. Appellant cites the case of Borovski v. P. & R. C. & I. Co., 101 Pa. Superior Ct. 304 in support of his position. An examination of that case will show that it does not sustain appellant. Quoting

from the opinion by our Brother TREXLER, p. 306: "It will be noticed that Dr. Monahan was not called as an expert and did not qualify as such. The plaintiff confined her examination of the witness to the *facts* in the case and did not ask him his opinion as to the *cause of death.* . . ,. . . . The plaintiff, as we have observed, in his examination elicited merely the *facts* in the case. . . . . . . The calling of a doctor merely to testify to facts within his knowledge does not bind the plaintiff to a position which sponsors his learning and expertness."

The existence or non-existence of indications of traumatic pneumonia was a circumstance relating to the *cause of death* which Dr. Burke was called by the appellant to prove. In order to answer the question as to the *cause* of death, it necessarily required expert knowledge. As said by GIBSON, C. J., " 'a party is entitled to bring out every circumstance relating to a fact which an adverse witness is called to prove': Bank v. Fordyce, 9 Barr 277." And where a witness has stated a fact, he may be asked by the other party to detail all the circumstances which qualify it, even though they may constitute new matter and form a part of his own case. Jackson v. Litch, 62 Pa. 451, 456; Bohan v. Avoca Borough, 154 Pa. 404, 409; Glenn v. Phila. & West Chester Traction Co., 206 Pa. 135, 138.

When the witness was called to express an opinion as to the *cause* of death, it was unquestionably proper to elicit any and all circumstances which entered into the formation of such conclusion, in order to ascertain whether they warranted a different conclusion.

The question objected to, viz: "Was there any evidence of traumatic pneumonia?" was certainly germane to the inquiry in chief, to wit: the cause of death. As stated by Mr. Justice BROWN, in Smith v. Phila. Traction Co., 202 Pa. 54: "It is true, cross-examination should be confined to the matters upon which the

witness is examined in chief, and a defendant will not be permitted to bring out new matter constituting his defense by cross-examining the plaintiff's witnesses; but it is equally true that, when the cross-examination is germane to what is inquired into in chief, or tends to elicit facts which, as in this case, the plaintiff ought to have brought out as part of the case, and which the court and jury should have known from him and his witnesses, the defendant should be allowed to develop what is withheld intentionally or otherwise. Even if, in one sense, it was new matter, yet, in another point of view, it was but developing a part of the *res gestae,* and this the defendant had a right to inquire into by cross-examination: Markley v. Swartzlander, 8 W. & S. 172.'' To same effect see Haun v. McCabe, 308 Pa. 431, 438.

The extent to which the cross-examination of a witness may be pursued is a matter within the sound discretion of the court below. To constitute reversible error there must have been a clear abuse of discretion and in which it is apparent that the complaining party has been injured: Jackson v. Litch, 62 Pa. 451, 457; Glenn v. Phila. & West Chester Traction Co., supra; King v. Myers, 60 Pa. Superior Ct. 345, 351.

In Jackson v. Litch, supra, Mr. Justice SHARSWOOD said that he had not been able to find a single case in which there had been a reversal on the ground that a party had been permitted to lead out new matter, constituting his own case, by the cross-examination of his adversary's witness. In the cases where there has been a reversal for that cause it was because of the entry of a non-suit or judgment non obstante veredicto, the court below having withdrawn that testimony from the jury, and thereby given effect to the alleged improper cross-examination: Hughes v. Westmoreland Coal Co., 104 Pa. 207; Sullivan v. New York Lake Erie & Western R. R. Co., 175 Pa. 361.

In the instant case the testimony was not withdrawn

from the jury, but was submitted in a charge concerning which no complaint is made. Furthermore, in view of the cross-examination of Dr. Burke, preceding the question in controversy, and to which no objection was made, we do not think that plaintiff suffered any injury from the ruling of the court.

The case of Mudano v. Phila. Rapid Transit Co., 289 Pa. 51, cited by appellant, has no application. The ruling in that case was that where there is an irreconcilable conflict in the testimony of experts called by plaintiff, the case should not be allowed to go to the jury. The instant case was submitted in a charge which left them free to find for plaintiff if they believed the death was the result of traumatic pneumonia.

We find no substantial error such as would justify a reversal.

The assignments of error are overruled and judgment affirmed.