Commonwealth *v.* Grant, Appellant.

Argued November 20, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Thomas O. Haydock,* for appellant.

*Earl Jay Gratz,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY RHODES, J., February 28, 1936:

This appellant was convicted upon an indictment charging him with embezzlement, fraudulent conversion, and wilful misapplication of funds of the trust company of which he was the president and a director.

The first and second counts of the indictment are drawn under section 1 of the Act of June 12, 1878, P. L. 196 (18 PS §2511), and the third count of the indictment is drawn under section 1 of the Act of April 23, 1909, P. L. 169, prior to its amendment by section 1 of the Act of April 16, 1929, P. L. 524 (18 PS §2516). The indictment was drawn substantially in the language of the acts of assembly, and was a compliance with the provisions thereof. We may as well

state at this point that it was not necessary to set forth in the indictment a particular reference to the acts on which it was based. Com. v. Sabo, 83 Pa. Superior Ct. 166. The motion to quash the indictment, for the reasons that (1) prosecution was not commenced within the time specified by the statute of limitations, and (2) that the indictment was defective because it did not specify under which acts of assembly the defendant had been indicted, was overruled. The case was submitted to the jury, and the appellant found guilty as indicted. Motion for new trial and motion in arrest of judgment were refused. Sentence was imposed, from which this appeal was taken.

The appellant has filed 35 assignments of error, many of which do not require any discussion.

The major portion of the argument on appellant's behalf is devoted to the sufficiency of the evidence to support the verdict. We are of the opinion that that is the only question involved which requires any extended consideration.

The assignments of error may be placed in four groups.

(1) The first 17 assignments of error relate principally to rulings of the trial judge on the admission or rejection of evidence. We do not think that any of these assignments should be sustained. The fourth assignment refers to the statement of the trial judge, in the presence of the jury: "That makes the defendant the real owner." No exception was taken to this statement, and the evidence in the case shows that it was not incorrect or prejudicial to the rights of the defendant. See Com. v. Mango et al., 101 Pa. Superior Ct. 385, 390.

The eleventh assignment pertains to a question by the district attorney. The record shows no ruling by the trial court. We find no reversible error shown by this assignment. The fourteenth assignment refers to

a stipulation relative to the subsequent foreclosure of the first mortgage on the property at 67th Street and Elmwood Avenue, Philadelphia. The appellant was responsible for the admission of this testimony in the form of a stipulation relative to the sheriff's sale. It does not constitute reversible error for the court below to have overruled the subsequent objection to its relevancy. The sixteenth assignment relates to a question asked the defendant by the trial judge. There was no exception taken to this question. We find nothing improper in the question or in the court's attempt thereby to obtain the facts. It is the right, and sometimes the duty, of the trial judge to interrogate witnesses. Com. v. Del Giorno, 303 Pa. 509, 154 A. 786.

Some of the assignments in this group are objections to the rulings of the trial judge on questions asked by counsel on the cross-examination of witnesses. The scope of cross-examination of witnesses is, to a very large extent, a matter within the sound discretion of the trial judge. Com. v. Barille, 270 Pa. 388, 113 A. 663; Valentine, Ex'r v. Federal Life Ins. Co., 111 Pa. Superior Ct. 311, 169 A. 387. We find no error in the court's rulings.

(2) By assignments 18 to 29, inclusive, together with 34, appellant charges that the "trial judge erred in refusing defendant's motion for new trial." Assignments 18 to 29, inclusive, pertain to the refusal of the trial judge to charge the jury as requested in defendant's respective points. The only exception taken to the refusal of defendant's points is to the first, which is set forth in the eighteenth assignment of error and reads as follows: "1. From all the evidence in the case your verdict should be 'Not Guilty.' " At the conclusion of the charge, the court asked: "Gentlemen, is there anything further you would like me to say? Mr. Haydock: Only as to my points. The Court: I think I have covered most of the points. Some of them I think

would only tend to confuse the jury. I tried to make the problem as simple as I could, considering the volume of the testimony. I tried to narrow the issue down for the jury, and point out just what they have to consider and determine. I think I did make use of your actual language in several of the points in what I said. I think I have covered them all. Mr. Haydock: Will your Honor give me an exception to any which you have not covered? The Court: If there is anything specifically you would like me to say I would be happy to do so. I want to present it fairly and fully. Mr. Haydock: On the question of intent, I do not think your Honor has covered that fully."

The court proceeded to comply with the request of appellant's counsel, and further instructed the jury on the question of intent.

The appellant took no exception to the charge as a whole or to any portion thereof, and we are satisfied that the appellant has no basis for complaint. See Com. v. Duca, 312 Pa. 101, 113, 165 A. 825, 829; Com. v. Weston, 297 Pa. 382, 387, 147 A. 79, 81; Com. v. Schmidt, 95 Pa. Superior Ct. 102, 107; Com. v. Evans, 70 Pa. Superior Ct. 534, 539.

The thirty-fourth assignment also charges that the trial judge erred in refusing defendant's motion for new trial, and assigns the following reason therefor: "That the jury mingled with the spectators in the Court Room before trial and during its progress, certain jurors conversed with certain of the Commonwealth's witnesses and others, with great detriment and prejudice to the Defendant, as more fully is set forth in affidavits about to be filed of record in this case." Neither the affidavits referred to nor the testimony taken by the court below on this subject is incorporated in the appellant's record and brief; and there is nothing in appellant's argument on this assignment that convinces us that there is any merit in it.

The refusal of a new trial, on the ground of the alleged misconduct of a juror, is a matter largely within the discretion of the trial court, and nothing has been presented to us to show that the alleged misconduct of the juror in this case was prejudicial to the accused. Com. v. Kosh, 305 Pa. 146, 158, 157 A. 479, 483. See Com. v. Filer, 249 Pa. 171, 178, 94 A. 822, 824; Com. v. Deutsch, 72 Pa. Superior Ct. 298; Com. v. Grotefend and Haun, 85 Pa. Superior Ct. 7; Blassotti v. Greensboro Gas Co., 105 Pa. Superior Ct. 403, 162 A. 178; Friedman v. Ralph Bros., Inc., 314 Pa. 247, 171 A. 900; McPeek v. Shafer, 120 Pa. Superior Ct. 425, 183 A. 80.

(3) Assignments of error numbered 30, 31, 32, and 33 charge that the trial judge erred in refusing defendant's motion in arrest of judgment. The reasons set forth in assignments 30 and 32 are to the effect that the evidence was insufficient to show that the defendant was guilty as charged. Insufficiency of the evidence gives no support to a motion in arrest of judgment, although it does support a motion for a new trial. Com. v. Jones, 303 Pa. 551, 154 A. 480; Com. v. Smith, 116 Pa. Superior Ct. 134, 177 A. 68. In the case of Com. v. Bateman, 92 Pa. Superior Ct. 53, page 56, it was held: "Judgments can only be arrested, in criminal cases, for causes appearing upon the face of the record; this is a general rule, and is well settled; an exception exists when pardon is pleaded before sentence. The record to be considered consists of the indictment, the plea and issue and verdict. The evidence in the case forms no part of the record within the rule that a motion in arrest of judgment can be based only on matters of record; and hence defects which appear only by aid of evidence cannot be the subject of such a motion."

The reason set forth in the thirty-first assignment not only fails to support a motion in arrest of judgment, but is also without merit. It is to the effect that there was undue delay in bringing the accused to

trial after he was indicted. Appellant, in his statement of questions involved, presents the proposition: "1. Whether the prosecution of a defendant, seven years after the happening of an alleged crime, no excuse for delay being shown, is in compliance with Article 6 [Sixth Amendment] of the U. S. Constitution, guaranteeing accused a speedy trial?" Appellant bases his argument in this connection on the fact that no reason or explanation was advanced by the Commonwealth for the delay. Appellant's contention has been answered in the case of Worthington v. United States, 1 F. (2d) 154 (certiorari denied 266 U. S. 626, 45 S. Ct. 125, 69 L. Ed. 475), wherein it was held: "Defendant's sole reliance was upon the bare fact that the case had not been prosecuted. If the defendant desired a speedy trial, it was his duty to ask for it, and we must assume that it would have been granted, had he made any effort to procure it. His long and uninterrupted acquiescence in the delay bars his right to complain." See, also, Phillips v. United States, 201 Fed. 259; Daniels v. United States, 17 F. (2d) 339.

Another alleged reason why the court erred in refusing motion in arrest of judgment is set forth in the thirty-third assignment as follows: "5. The indictment does not specify under which Act of Assembly the Defendant is indicted, there being several acts under which the Defendant might have been indicted." As previously stated, an indictment is not defective because it does not refer to the act of assembly on which it was based. Com. v. Sabo, supra.

The motion in arrest of judgment was properly refused.

(4) The thirty-fifth assignment relates to the judgment and sentence.

This leaves for our consideration the sole question

whether the evidence was sufficient to support the verdict of guilty.

The appellant, on September 15, 1927, paid $1,000 to a real estate broker by the name of Refson on account of the purchase price of a vacant lot, located at 67th Street and Elmwood Avenue, Philadelphia. On December 5, 1927, one Louis E. Hoser, a small depositor in the Allegheny Title and Trust Company, of which the appellant was the president and a director, acting as a strawman for the appellant, took title to the property upon which the appellant had made a down payment of $1,000. Hoser received conveyance from Herman Newman. The price to be paid Refson was $21,000. The property had previously, on October 31, 1927, been sold by one Holland to Newman, and at the same time that Newman took title he gave a mortgage of $20,000 to the trust company and received the proceeds thereof. Witnesses for the Commonwealth, who were present at the settlements involved in these transactions, testified that Newman endorsed the $20,000 check, which he received from the trust company as proceeds of the mortgage, to an agent for Refson. Refson gave his personal check for $15,000, which was used to pay Holland. In this way the property passed from Holland to Newman and then to Hoser, the latter holding title for the appellant.

Hoser and his wife, on the same day that he took title to the property in question, executed an undated deed for the premises to the appellant. This deed was not recorded. Hoser executed an agreement with Louis Goldman, whereby Charles Goldman was to take a $30,000 mortgage on the property to which Hoser had obtained title. On December 5, 1927, this mortgage was given by Hoser to Charles Goldman for the purpose of financing the construction of a one-story brick garage on the premises, as provided in the agreement. Twenty thousand one hundred sixteen dollars and sixty-seven

cents ($20,116.67) of the proceeds of this mortgage was used to satisfy the previous mortgage from Newman to the trust company, and the balance remaining, after the deduction of expenses incidental to the placing of the mortgage, was placed in a building operation account. This balance was $6,079.83. It appears that Hoser knew nothing of the various transactions. He signed such documents as were presented to him by the appellant for his signature. He admitted that he was a mere figurehead.

Between March 17, 1928, and May 10, 1928, Hoser borrowed $30,000 additional on the Elmwood Avenue property from the trust company. These loans were secured by bond and mortgage, dated March 14, 1928, in a like amount in favor of the trust company. Checks or vouchers aggregating $36,000 were made out in favor of the Northern Construction Company, which had the contract for building the garage. These were signed "George H. Grant for Louis Hoser." William H. Ashton, a director of the trust company and treasurer of the Northern Construction Company which built the garage on the Elmwood Avenue property, testified that the approximate cost of the construction of the building was $40,000, and that $36,000 of this amount was paid to his company by checks from the Hoser building operation account, and the remaining $4,000 was paid by the appellant, $2,000 by his check and $2,013.17 by his note. The latter had noted thereon—"Balance due 67th and Elmwood Avenue."

The next step in this transaction was the execution, on September 8, 1928, of a $50,000 mortgage by Hoser to the trust company, which was immediately assigned by the trust company to Charles Goldman. Thirty thousand dollars of the proceeds of this mortgage was used to satisfy the first mortgage of $30,000 held by Goldman. After deducting the settlement charges, $15,328.35 was paid to the trust company on account

of the principal and interest of the $30,000 second mortgage held by it. At this point, the balance of the principal of the trust company's $30,000 second mortgage became a first lien, and the newly created $50,000 mortgage held by Goldman became a second lien.

On September 15, 1928, the date named in the indictment, Louis E. Hoser executed a promissory note for $40,000 to the trust company. He gave the trust company a mortgage, dated September 10, 1928, on the Elmwood Avenue property for a like amount. Hoser testified that he received no consideration for signing this note; that he did it as a favor to the appellant; and that he did not know what became of the proceeds. Fifteen thousand one hundred fifty-five dollars and twenty-five cents ($15,155.25) of the $40,000 loan to Hoser was used to pay the balance of the principal and interest due to the trust company on its mortgage which was then a first lien. The balance of $24,844.75 was credited to the loan account of the appellant and used to reduce his personal indebtedness to the trust company.

At a meeting of the board of directors of the trust company on November 9, 1927, a resolution was passed requiring "loans from $1,000 to $10,000 secured or unsecured to be passed by the Finance Committee and recommended to the Chairman of the Board of Directors for approval by the Board; loans of $10,000 and over, secured and unsecured must be approved at a regular or special meeting of the Board of Directors." There was no record of the approval of the $40,000 loan to Hoser in the manner required, although the previous loan of $30,000 to him had been approved on June 26, 1928.

Appellant testified in his own behalf that he bought the property at 67th Street and Elmwood Avenue from Refson for $21,000; that he purchased this property on behalf of a real estate syndicate operated for the trust

company; that this syndicate was formed by the directors in order to dispose of three pieces of real estate which the trust company had acquired for bank sites; that he operated the syndicate in his own name and was given full power by the directors to act in all matters pertaining to it. He explained that it was necessary to make this new investment in connection with the syndicate property in order to "liquidate the dead stuff," and that Hoser held title thereto for the trust company. He further explained that the Elmwood Avenue property was not included in the "George H. Grant Special Account," which included all of the syndicate properties, and that it was not included in an audit of this special account made by the Rishel Audit Company on September 30, 1928, for the reason that the financing had not been completed. It appears that the transactions relative to the Elmwood Avenue property were through his personal and regular account. The last payment to the construction company from the building operation account was made on May 28, 1928, and the Hoser note for $40,000 was given on September 15, 1928, or fifteen days before the audit. Release of liens on the building was executed on September 8, 1928. Appellant also admitted that $24,000 of the $40,000 loan to Hoser was used to decrease his personal indebtedness to the trust company, which indebtedness, prior to the credit of September 15, 1928, was $34,-435.99 as of September 4, 1928. He also testified that he borrowed money from the trust company, from time to time, on his individual notes; that, although the loans were made to him as an individual, he used this money to purchase trust company stock; and that the stock was purchased "to support the bank" and for other than personal purposes. It appears from the evidence that the appellant's loans for stock purchased for his own account were paid by the credit of $24,844.75 on September 15, 1928. On that date, he owned 793

shares of trust company stock. Appellant admitted that he was familiar with the resolution of the board of directors of November 9, 1927, requiring the board's approval of all loans over $10,000, and that he presided over this meeting when the resolution was passed. His explanation was that the $40,000 loan to Hoser was approved, as "part of that was the $30,000 originally approved," and that it was common knowledge among the officers and directors of the trust company that these loans, including the $40,000 loan, had been made to Hoser. Four directors of the trust company testified during the trial. Three stated that they knew nothing of the Hoser loan of $40,000, while one, who was also an officer of the trust company, testified that he knew that it had been made.

The issue was properly presented to the jury, and, as the evidence was conflicting, it was the province of the jury to determine where the truth lay. The jury could properly conclude from the evidence that Hoser was acting for the appellant; in fact, we do not see how the jury could find otherwise. It could conclude that the appellant obtained a $40,000 loan on his property without authority of the board of directors and in violation of its resolution; that the loan was subsequent to a $50,000 first mortgage on a lot for which the appellant paid $21,000 and afterwards erected thereon a building, in which was invested about $40,000 at the time of the loan of $40,000 from the trust company; that the total indebtedness against the property was $90,000, and the total expenditures thereon, including financing of the mortgages, were less than $70,000. It would be somewhat remarkable for the jury to believe that the appellant was acting for the trust company or for the syndicate which was composed of directors who had put up $68,000 to relieve the trust company of its excessive real estate holdings. That this syndicate should become involved in a new real estate venture,

of the kind and magnitude shown by the evidence, is rather incredible and is inconsistent with the purpose of the syndicate. The jury could find that $24,844.75 of trust company funds was used by the appellant for his personal benefit and to the prejudice of the trust company. The appellant's personal interest in the entire transaction supplies the intent to benefit himself at the expense of the institution of which he was the head. The jury was justified in finding that what appellant actually did was to take $24,844.75 of trust company funds for his own use. That this sum was secured by a mortgage is immaterial. Appellant's contention that he merely put an unsecured loan in a secured position, and that the trust company suffered no loss, is without merit. To say that this transaction was a mere exchange of credits may be an ingenious, but not a convincing, argument. While the offense of wilful misapplication of the moneys of the trust company under the Act of April 23, 1909, P. L. 169, §1, must have been committed by the appellant with intent to injure or defraud the trust company, that intent may be shown or be inferred from the doing of the wrongful, fraudulent, and illegal acts which in their necessary results naturally produce loss or injury to the trust company. Com. v. Huster, 118 Pa. Superior Ct. 24, 30, 178 A. 535, 537. From a careful examination of the record, we are convinced that the verdict is fully supported by the evidence, and that no reversible error has been shown in the 35 assignments.

The assignments of error are overruled.

The judgment of the lower court is affirmed, and it is ordered that the defendant, George H. Grant, appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.