## Commonwealth v. Brown

96

*Baird, McCamley & Miller,* for petitioner.

*Charles C. Brown,* for Commonwealth.

CAMPBELL, P. J., November 3, 1966.—On the afternoon of June 17, 1964, defendant, in the company of Albert George Isaac and Robert Mulraney, made his escape from the State correctional institution at Rockview. Two days later, they entered a nearby family residence, bound one or more of the occupants, took some money, and forced the husband of the family to drive them in his station wagon to Altoona, where they were apprehended. They were charged, inter alia, with escaping prison, robbery, burglary, and assault and battery.

A preliminary hearing was afforded all three defendants on June 22, 1964, at which time all entered pleas of not guilty. A grand jury returned true bills to the indictments charging the various crimes on October 5, 1964.

On November 18, 1964, while incarcerated in the State correctional institution at Pittsburgh, Robert Mulraney filed an application for final disposition of the pending indictments in accordance with the provisions of the Act of June 28, 1957, P. L. 428, sec. 1, 19 PS §881. Through an oversight, his case was not scheduled for trial, and on June 11, 1965, he filed a motion to quash and dismiss the indictments. Under the act, as construed by Commonwealth v. Klimek, 416 Pa. 434, the court had no alternative other than to quash the indictments as to Robert Mulraney, which it did by order on July 18, 1965.

Defendants Brown and Isaac were brought to trial before a jury on June 17, 1965. The trial resulted in the conviction of both defendants of the crimes of escape, robbery, burglary, and assault and battery, and defendants were promptly sentenced. At arraignment prior to trial, Brown and Isaac filed a motion to quash the indictments, alleging that they had been deprived of their constitutional rights to a speedy trial, since true bills were found October 5, 1964; that they made no request for a continuance; and that the warden, superintendent, commissioner of correction, or other official having custody of them did not inform them of the source and contents of any untried indictments against them, pursuant to the Act of June 28, 1957, P. L. 428, sec. 1(c), 19 PS §881(c). The court overruled this motion before trial.

We are now concerned only with Roy Leraine Brown. On March 17, 1966, he filed a petition under the Post Conviction Hearing Act. He complains that, acting on his own behalf, he was refused an appeal from his conviction by the Superior Court. The prothonotary advised him that it was untimely. He also raises the same legal question as was raised in his motion to quash the indicement prior to trial, namely, an alleged violation of the Act of June 28, 1957, P. L. 428,

sec. 1(c). Since the same legal question is involved now as would have been involved if his prior appeal to the Superior Court had been allowed, we shall ignore as moot or useless the question of the timeliness of his appeal and devote our attention to the legal question raised by defendant.

To enable an intelligent disposition to be made of petitioner's present petition, the district attorney has filed an answer, counsel was appointed for the defendant, and defendant was given an opportunity to testify. From the transcribed record and docket entries, we make the following findings of fact:

### 1964

June 17: Defendant escaped from the State correctional institution at Rockview.

June 19: Defendant involved in crimes, inter alia, of burglary, robbery and assault and battery.

June 22: Defendant afforded a preliminary hearing and pled not guilty to all crimes with which he was charged.

June 24: Defendant transferred from State correctional institution at Rockview to State correctional institution at Huntingdon to complete the sentence he was serving at the time of his escape.

June 26: Defendant was given a status sheet advising him that detainers were filed against him from Centre County for crimes of, inter alia, escape, burglary, robbery, and assault and battery. Said status sheet contained a notice, which defendant read, indicating that defendant could request the disposition of all untried indictments within 180 days.

September 3: District Attorney of Centre County sent a letter to defendant with a copy thereof to William C. Renninger, senior records officer, advising defendant of the crimes with which he was charged in Centre County; that he could enter a plea of guilty on

September 21, 1964, if he wished; that arrangements would be made for his transportation to Bellefonte, Centre County, for this purpose if he desired to enter a plea; that if he failed to hear from him, the indictments would be placed before the Centre County Grand Jury on October 5, 1964.

September 8: The Senior Records Officer of the State Correctional Institution of Huntingdon had a conference with defendant and discussed the contents of the District Attorney's letter with defendant, and defendant advised him that he would not enter a guilty plea.

October 5: True bills were returned on all of the indictments against defendant by the Centre County Grand Jury.

October 8: Certified copies of indictments against defendant were forwarded to the Superintendent of the State Correctional Institution at Huntingdon.

### 1965

June 7: Defendant wrote a letter to the District Attorney asking whether the charges were placed before the grand jury, whether a trial date had been set, whether counsel was going to be appointed for him, and that it was his desire to settle the matter as soon as possible.

June 17: Defendant brought to trial before jury and found guilty and sentenced by the court.

August 2: The Prothonotary of the Superior Court refused defendant's attempted appeal as untimely.

### 1966

March 17: Defendant filed petition under Post Conviction Hearing Act.

Defendant alleges four reasons why he is eligible for relief under the Post Conviction Hearing Act. However, at the hearing he admitted that he was adequately and competently represented by counsel at his

trial; that he had a fair trial free of prejudice and trial errors; that he has no exculpatory evidence; and that the only complaint he wanted to raise on an appeal from his prior conviction and at this time through his petition under the Post Conviction Hearing Act was the fact that he was not advised of the action of the Centre County Grand Jury on the indictments against him, and that, therefore, he was not afforded a speedy trial, as is required by the Act of June 28, 1957, P. L. 428, 19 PS §881(c). He specifically complains of a violation of section 1(c) of the act, which reads as follows:

"The warden, superintendent, commissioner of correction or other officials having custody of the prisoner shall promptly inform him, in writing, of the source and contents of any untried indictment against him concerning which the warden, superintendent, commissioner of correction or other official has knowledge and of his right to make a request for final disposition thereof".

The facts are not in dispute. Defendant, after being given a preliminary hearing on the criminal informations, was returned to the State correctional institution to complete the sentence he was serving at the time of his escape. Two days after his return, he received a status sheet advising him that detainers were filed against him for the crimes with which he was confronted at the preliminary hearing. The sheet contained a notice, which defendant read, indicating that he could request the disposition of any untried indictments within 180 days. A little over two months later, he received a notice from the District Attorney, which was discussed with defendant by the senior records officer of the correctional institution. He was advised when he could plead guilty and, if he chose not to do so, the indictments would be placed before the Centre County Grand Jury on October 5, 1964. True bills

were returned on the indictments, and certified copies were sent to the superintendent at the State correctional institution at Huntingdon three days later. The superintendent failed to advise defendant, in writing, of the action taken by the grand jury on the indictments. On June 7, defendant wrote a letter of inquiry to the District Attorney. When this letter was received, the District Attorney treated it as a request for trial, and defendant was brought to trial on June 17, 10 days after the receipt of the communication from defendant. Defendant contends that the indictment should be quashed and he should be discharged for the reason that the superintendent or warden at the correctional institution did not promptly inform him in writing of the source and contents of the untried indictments. We hold otherwise.

Both the Constitutions of Pennsylvania and of the United States guarantee a speedy public trial, but an accused, to avail himself of this guarantee, must request a trial: Commonwealth v. Grant, 121 Pa. Superior Ct. 399 (1936); Commonwealth v. Watson, 16 D. & C. 2d 190 (1958); Commonwealth v. Pitchcuskie, 35 Northumb. 17 (1962).

The manner, form, content and other provisions of the request are set forth in section 1 of the Act of June 28, 1957, P. L. 428, which are mandatory: Com. v. Udelson, 10 Chester 541 (1962).

Defendant has never made a request in accordance with the act. He was, therefore, treated more favorably than the law specifies with respect to a prompt trial.

The only penalty set forth in the Act of 1957 is that if the action is not brought to trial within 180 days after a request is made, no court shall any longer have jurisdiction and shall enter an order dismissing the action with prejudice: Act of June 28, 1957, P. L. 428, sec. 2, 19 PS §882. There is no such penalty provided

if a warden, superintendent, commissioner of correction or other official having custody shall fail to inform a prisoner of the source and contents of any untried indictment, as is provided in section 1(c). While they may be subject to disciplinary action, their failure to notify defendant has caused him no prejudice. Defendant here knew of the charges against him. He was reminded again during his subsequent incarceration on another crime and further informed when the indictments would be presented to the grand jury. He chose to remain silent. At a later date, he made an inquiry of the District Attorney, and within 10 days after that inquiry he was brought to trial. Under no circumstances can we conclude that his constitutional right to a speedy trial was abridged. Defendant testified as follows:

"Q: And you knew that when you went back to prison that you would have to stand good for these charges sometime or other?

"A: Yes, Sir.

"Q: And you had a discussion with prison officials in Huntingdon on at least one and probably two occasions regarding how you wanted to—how you wanted us to handle it, whether you wanted to plead guilty or not to these charges?

"A: Yes, Sir.

"Q: And you knew that at any time you wanted to have untried indictments disposed of, you could request the right to do so, didn't you?

"A: Yes, Sir.

"Q: And you knew the limit was 180 days on that under the act?

"A: Yes, according to the indictment, yes.

"Q: Are you familiar with that?

"A: Yes, Sir.

"Q: Now, knowing all these facts, then you decided to have your untried indictments disposed of and sent

a request in to the district attorney of Centre County, didn't you?

"A: Yes, Sir.

"Q: That date was what?

"A: June 7, 1965.

"Q: June 7th and then on June 17th, pursuant to that letter you stood trial before a jury?

"A: Yes, Sir.

"Q: On all charges?

"A: Yes, Sir".

Defendant is particularly grieved in this instance because a codefendant was completely discharged because he was not brought to trial within 180 days after the receipt of a proper notice. We can understand his feelings in the matter, but one oversight does not justify another. Defendant further testified as follows:

"Q: What reasons did you allege for the appeal? What grounds did you indicate that you had to justify an appeal to the Superior Court?

"A: The 180-day rule was one of my grounds. I thought to raise the point; Mulraney not being brought to trial, as he was equally arrested, equally guilty along with the rest of us.

"Q: What you are saying, your real complaint here is that the former District Attorney by reason of an oversight did not try Mr. Mulraney within the 180-days?

"A: Yes, Sir.

"Q: And so you think another District Attorney ought to make the same oversight so that you can get the same break that Mr. Mulraney got?

"A: I thought I should have the same opportunity as Mr. Mulraney got".

We can find no valid reason to sustain defendant's position.

And now, to wit, November 3, 1966, defendant's petition is dismissed and the previous sentences of

this court are affirmed. Costs to be reimbursed by the County of Cambria.